The UNITED STATES of America, The State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION; Hooker Chemical Corporation; Occidental Petroleum Corporation; The City of Niagara Falls, New York; The Niagara County Health Department; and the Board of Education of The City of Niagara Falls (Love Canal Landfill), Defendants.

Civ–79–990C.

United States District Court, W. D. New York.

June 9, 1981.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Jack S. Penca, Asst. U. S. Atty., Buffalo, N. Y., Michael Elder, Hazardous Waste Section, Dept. of Justice, Washington, D. C.; and James Bunting and William Walsh, E. P. A., Washington, D. C., of counsel), for plaintiff United States.

Robert Abrams, Atty. Gen. of N. Y., New York City (John W. Corwin, Jay C. Lipner, Marcia J. Cleveland, Lorelei J. Borland, and Mary Ellen Burns, Asst. Attys. Gen., New York City, of counsel), for plaintiffs State of New York and UDC–Love Canal, Inc.

Wald, Harkrader & Ross, Washington, D. C. (Thomas H. Truitt, and Steven K. Yablonski, Washington, D. C., of counsel), and Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Louis Nizer, George Berger, and Martin Wasser, New York City, of counsel), and Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y. (David K. Floyd and William G. Gisel, Jr., Buffalo, N. Y., of counsel), for defendant Corporations.

Carl Mooradian, Corp. Counsel for City of Niagara Falls, Niagara Falls, N. Y. (Joel E. Schweitzer, Sp. Counsel, Niagara Falls, N. Y., Gellman, Brydges, Schroff & Schweitzer, Niagara Falls, N. Y., of counsel), for defendant City of Niagara Falls.

Benjamin N. Hewitt, Sp. Counsel, Niagara Falls, N. Y., of counsel, for defendant Board of Education of the City of Niagara Falls.

John V. Simon, Niagara County Atty., Lewiston, N. Y., of counsel, for County of Niagara.

Hurwitz & Fine, Buffalo, N. Y. (Theodore J. Burns, Buffalo, N. Y., of counsel), for defendant Niagara County Health Department.

Steven Shapiro, New York Civil Liberties Union, New York City, amicus curiae.

CURTIN, Chief Judge.

This is a motion for a protective order in the so-called "Love Canal" lawsuit, a massive environmental pollution action commenced by the United States in December 1979, in which plaintiffs seek in excess of $45 million in damages for violations of various anti-pollution laws and for common law nuisance in the City of Niagara Falls, New York. Plaintiff State of New York has served three sets of interrogatories and requests for documents on "Hooker."[1] Defendant Hooker petitions for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Hooker submits a proposed order which is set out in the margin[2] and which would require that, prior to

1. Hooker Chemicals & Plastics Corporation, Hooker Chemical Corporation, Occidental Petroleum Investment Company, and Occidental Petroleum Corporation.

2. ORDERED that discovery by all parties in this action, shall unless ordered otherwise by this Court, be conducted in accordance with the following procedures:

1. *Definitions.*

A. "Documents and/or information" means all information, documents, transcripts, notes and other writings reflecting, generated in the course of, or otherwise relating to, responses to document requests, interrogatories or subpoenas served upon the State of [sic] Hooker, depositions or interviews of present or former employees of the State or Hooker, and responses to any other voluntary or formal discovery requests or orders served upon the State or Hooker during the pretrial stage of this action.

B. "Qualified persons" means counsel for the State and Hooker, clerical employees and other employees of such counsel, the State and Hooker who are assigned to, assisting in, or exercising supervisory responsibility over this action, counsel for Hooker's insurance carriers, and experts and consultants whose assistance is required by the State or Hooker in the course of this action.

2. *All Documents and Information.*

Should a qualified person (other than counsel and representatives of the party producing the documents and information) wish to disclose or refer to, or be requested or required to disclose or refer to (pursuant to the Freedom of Information Act or otherwise) any such documents or information described in Paragraph 1A, above, to anyone other than a qualified person, counsel for the producing party shall be so informed by telephone and, if practicable, in writing, not less than ten (10) days in advance of any such contemplated disclosure or reference, including the identity and professional affiliation or employer of the person to whom such documents and information are to be disclosed or referred.

3. *Confidential Documents and Information.*

A. Documents and information designated by the State or Hooker as confidential either at the time the documents or information are disclosed to the State or Hooker, or in the case of deposition or interview transcripts within fifteen (15) days after receipt of such deposition or interview transcripts by the State or Hooker (which transcripts will be treated as confidential during said fifteen (15) day period), will be treated as confidential and will not be disclosed, directly or indirectly, to anyone other than qualified persons, subject to the procedure described in this Paragraph and Paragraph 2, above. Such documents and information shall bear the legend "Confidential—Civil Civil Action No. 79-990" or a similar legend.

B. If counsel for the State or Hooker disagree with the other's designation of documents or information as confidential, they shall attempt to resolve such dispute on an informal basis. If they are unable to do so, the party objecting to the designation may petition the Court for appropriate relief. Pending a determination by the Court and for a minimum of ten (10) days subsequent thereto, such documents and information shall be treated as confidential.

C. Should a qualified person (other than counsel and representatives of the party producing the documents and information) wish to disclose or refer to, or be requested or required to disclose or refer to, any such confidential documents or information to anyone other than a qualified person, he shall so inform counsel for the party that produced the documents or information by telephone and, if practicable, in writing, not less than ten (10) days in advance of any such contemplated disclosure or reference, of the identity and professional affiliation or employer of the person to whom such documents or information are to be disclosed or referred. Should counsel for the party producing such confidential documents or information then move for an order to limit or bar such disclosure or reference, the documents or information in question will not be disclosed to such person pending final disposition of any such motion by the Court.

D. The confidential documents or information shall not be disclosed to any expert or consultant described in Paragraph 1B, above,

disclosure to a non-party of any material obtained through discovery, Hooker would be given 10 days' notice. In addition, paragraph 3 of the proposed order would not allow disclosure of documents which Hooker labels "confidential" until after there is a court order permitting disclosure.

Hooker states that such an order is a "common protective device" often employed in complex litigation and not really a protective order but a procedure for dispute resolution. It maintains that the information sought, if disclosed, could hinder its business and prejudice Hooker as it prepares to defend in parallel-state litigation.[3] Hooker also notes that a "volatile atmosphere" has developed in which a "fair and objective disposition of these cases will be difficult to achieve." Finally, Hooker argues that the State's opposition to a protective order "lacks foundation" because it has agreed to modify earlier subpoenas *duces tecum* so as to provide Hooker notice of any

requests for information it has obtained through discovery.

The State vigorously opposes the motion on numerous grounds. Primarily, it takes the position that under Rules 26(c) and 34(b) Hooker may assert privilege and refuse to divulge certain information even to plaintiffs or seek a protective order for the particular documents which it believes properly should be withheld from public scrutiny. However, the State argues, a blanket order in the absence of any specific showing of privilege, trade secret material, or the like is not authorized by the rules. In support of its position, the State relies on the strong public policy, expressed both in the Federal Rules of Civil Procedure and in the State's own Freedom of Information Law, in favor of full, public disclosure of court business.

The New York Civil Liberties Union, appearing in this action as *amicus curiae*, joins

until such person has executed an affidavit stating that he has read and understood this Stipulation and agrees to be bound by the terms hereof. Such documents and information shall be made available to such person only for the purposes of this action and for no other purpose.

E. At the time that participation in this action by any qualified person or any person described in Paragraph 3D of this Stipulation concludes, the confidential documents and information and all copies thereof in the possession of such person, together with all notes, memoranda or other papers containing information copied from such documents or information, shall be returned by such person to counsel for the party who retained or otherwise secured the services of such qualified person.

F. Portions of any written record of any depositions, interviews or proceedings containing confidential documents or information shall be marked and held confidential pursuant to the terms of this Stipulation.

G. In the event that counsel for the party receiving confidential documents or information decide to introduce into evidence any portion of the confidential documents or information, such counsel shall notify counsel for the party which produced such documents or information fifteen (15) days prior to such introduction in order that that party may have an adequate opportunity to seek *in camera* treatment. If advance notice cannot be provided pursuant to this Stipulation, counsel for the party producing the confidential documents or information will be so notified at the time of introduction of such documents or information, and the

document or information shall be accorded *in camera* treatment, pending a final ruling by the Court upon any request by the producing party for such treatment, which request shall be filed within ten (10) days of receipt of such notice.

H. No confidential documents or information shall be placed on the public record of this action prior to trial. Introduction of such documents or information, or any portion thereof, into the record at trial or thereafter shall be governed by the procedure of Paragraph 3G, above.

4. Nothing herein shall preclude the State or Hooker from seeking a modification of the protection for particular documents and information prior to or after the production or disclosure of such documents and information by the State or Hooker.

5. Nothing in this Stipulation shall affect the use of documents or information at the trial of this matter, except the procedures set forth in Paragraph 3G, above.

6. This Stipulation does not limit the obligations previously agreed to be undertaken among the parties and between them concerning confidentiality of documents and information.

3. The affidavit of William G. Gisel, Jr., one of Hooker's attorneys, states:

[T]hese defendants are currently involved in parallel litigation in the Supreme Court of the State of New York involving more than 600 private actions in which over 1300 plaintiffs are seeking enormous damages.

the State's opposition to Hooker's motion. They draw the court's attention to the fact that it is the public's business which we do. They argue that issues of great public import, having consequences beyond the mere litigants to the action, are often resolved by the courts in this country, and that this is another reason for maintaining full public scrutiny of the administration of justice. Finally, they note that enforcement of a protective order such as the one sought here raises many of the dangers of a prior restraint. *In Re Halkin*, 598 F.2d 176 (D.C. Cir.1979).

The United States, the original plaintiff in this action, sided generally with the State in this proceeding, taking the position that Hooker's application for a protective order is premature and over-broad.

### The Law

Rule 26(c) of the Federal Rules of Civil Procedure provides that:

> Upon motion by a party ... and *for good cause shown*, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense .... (Emphasis added.)

■ I believe this language makes clear that there is a burden on the party seeking a protective order. The burden on the moving party constitutes a requirement for a threshold showing that there is "good cause" that the order issue. *General Dynamics Corp. v. Self Manufacturing Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973), *cert. denied* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). It is not a mere balancing of equities. Once such a preliminary showing has been made, the court may then consider the countervailing considerations in determining whether to issue a protective order in the particular case and, if so, how broad it is to be. *See generally*, Note, *Nonparty Access to Discovery Materials In the Federal Courts*, 94(5) Harv.L.Rev. 1085 (March 1981).[4]

In many complex pieces of litigation, particularly those involving large corporate parties, the parties agree to the issuance of a broad protective order at the outset for their mutual protection, both from their competitors and waiting predatory third parties. In those cases, the issues which are present in the instant dispute are not generally addressed by the court. In those cases it is generally conceded that either party could demonstrate the needed "good cause" if put to the test. However, the fact that something may be the general practice does not mean that the practice must be adopted by an unwilling party. The State is certainly within its rights to demand that Hooker make the requisite showing if it believes the confidentiality claim would be used haphazardly like a "rubber stamp."

■ In this case, movant Hooker has alleged in a most conclusory fashion that it will suffer certain injuries. No specific instances are cited where trade secrets will be disclosed or where Hooker will be put at a competitive disadvantage. *Parsons v. General Motors Corp.*, 85 F.R.D. 724 (N.D.Ga. 1980); *United States v. IBM*, 67 F.R.D. 40, 46 (S.D.N.Y.1975). On this record, the court cannot evaluate these claims of particularized need, and the order cannot issue on this basis. *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152 (1964).

4. Some have argued that a balancing test is required by this language in order to determine whether a protective order should issue. *Compare* P. A. Mathy, *Protective Orders and Third-Party Access to Civil Discovery*, 9(1) Hofstra L.Rev. 129, 139, *et seq.* (Fall 1980) *with Note, Nonparty Access to Discovery Materials in the Federal Courts*, 94(5) Harv.L.Rev., *supra* at 1087–91. The court has, however, been unable to find any case which, after discussing the precise issue, has *in terms* accepted the balancing test. *Cf., Chemical and Industrial Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962); *see also* P. A. Mathy, *supra* at 139, n.40. It does not appear that a mere balancing test would adequately ensure the broad and liberal treatment to be accorded the federal discovery rules. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). As Hooker has made no showing of "good cause" for its motion in the instant lawsuit, we need not address this question directly at this time.

■ Hooker also argues that the disclosure of information garnered through discovery will be detrimental to its position in parallel lawsuits. This is unquestionably true. However, this is not a reason for a court to impose a protective order. Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. *Accord, Parsons v. General Motors Corporation, supra; Patterson v. Ford Motor Co.*, 85 F.R.D. 152 (W.D.Tex.1980); *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y.1970). Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources. *Williams v. Johnson & Johnson, supra*, at 32. This is particularly the case in lawsuits where the resources available to the parties are uneven. Individuals who are plaintiffs might have a most difficult time extracting information, whereas powerful litigants such as the United States and the State might find it relatively easier to compel production. Nor is it especially significant that the other litigants who might try to "piggy-back" their disclosure proceedings on top of federal discovery are litigants in state court. We perceive no intention in the Federal Rules that incidental benefits of liberal federal discovery should not accrue to litigants in state courts who are pursuing ancillary lawsuits, provided there is no attempt to exploit the federal litigation discovery process *solely* to assist litigation in a foreign forum. *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y.1973). *See generally* P. A. Mathy, *supra.*

■ Hooker's other argument, that a fair and objective disposition of these cases will be difficult because of the volatile atmosphere which has developed, is also unavailing. First, there is no question but that this lawsuit will be tried by the court as finder-of-fact. The danger of poisoning a jury's judgment simply does not arise. In addition, the mere fact that a case has gained some notoriety certainly cannot be sufficient reason to conceal the discovery process. On the contrary, it may well be reason to issue a protective order only most reluctantly.

Finally, this brings us to the prescient observations of the Circuit Court of Appeals for the District of Columbia in the case of *In Re Halkin*, brought to our attention by *amicus* New York Civil Liberties Union. In that case the Court of Appeals struck down an order issued by the district court which would have restricted disclosures by counsel to nonparties of CIA activities learned of in the discovery process. In that case the district court had issued an order prohibiting parties and counsel from disclosing information revealed to them in discovery. The Court of Appeals refused to enjoin the attorneys from disclosing what they had uncovered in part because of "the First Amendment interest in discovery materials." The court said that:

Generally speaking, when a party obtains documents or information through the discovery process, he can "use that information in any way which the law permits." (Citations omitted.)

*In Re Halkin*, 598 F.2d *supra* at 188. While it is true that that case dealt with a restraining order in the absence of an earlier protective order, I apprehend no meaningful difference from the instant case. On the other hand, on the current state of the record, we are not yet at the stage where an order must issue silencing attorneys and sealing court records.

The knowledge that a protective order may, under appropriate circumstances, constitute an improper "prior restraint" must, however, give the court pause even at this stage of the discovery proceedings. *Cf., International Products Corp. v. Koons*, 325 F.2d 403, 408–09 (2d Cir. 1963); *In Re Halkin*, 598 F.2d *supra* at 188. If there is need to renew the instant motion at a point later in this or related litigation,[5] the parties may

5. There are four "Love Canal" lawsuits which were filed simultaneously. A proposed settlement has been submitted for consideration by the court in one suit. *United States v. Hooker*

well wish to take up this problem at that time.

The motion for a protective order is denied. Discovery shall continue forthwith.

So ordered.

*(Hyde Park Landfill)*, Civ. 79–989. The other two have thus far evidently lain dormant. *United States v. Hooker (102 Street Landfill)*, Civ. 79–987; *United States v. Hooker ("S" Area Landfill)*, Civ. 79–988.