UNITED STATES of America; the State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION; Hooker Chemicals Corporation; Occidental Petroleum Investment Company; The City of Niagara Falls, New York; Niagara County Health Department; and the Board of Education of the City of Niagara Falls, Defendants.

No. CIV–79–990C
(Love Canal Landfill).

United States District Court,
W.D. New York.

Supplemental Order No. 5 Sept. 11, 1986.

Supplemental Order No. 7 Oct. 15, 1986.

Supplemental Order No. 8
Feb. 18, 1987. *

* Published at 114 F.R.D. 100.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div. (Barry S. Sandals, of counsel), Washington, D.C., Robert Abrams, Atty. Gen., State of N.Y. (Eugene Martin-Leff, Judith Kimmerling, Asst. N.Y. State Attys. Gen., of counsel), New York City, for plaintiffs.

Piper & Marbury (Thomas H. Truitt, of counsel), Washington, D.C., for defendants.

CURTIN, Chief Judge.

SUPPLEMENTAL ORDER NO. 5

This motion arises out of the United States' attempt, pursuant to Rule 30 of the Federal Rules of Civil Procedure, to take the sworn deposition of Dr. Marvin Legator [Legator] on July 30, 1985.[1] Occidental Chemical Corporation [OCC], formerly Hooker Chemical & Plastics Corporation [Hooker], has opposed this discovery request and has moved for a protective order pursuant to Rule 26(b)(4)(B) or, in the alternative, for an order deferring compliance with such discovery request until the United States complies with certain of OCC's discovery requests. The United States opposes OCC's motion. Rule 26(c) and (d).

The pertinent facts of this case are as follows. In early 1980, the United States commissioned Dr. Dante Picciano and his Biogenics Corporation to conduct a chromosome study of Love Canal area residents. Dr. Picciano submitted a report of his findings [the Picciano Study] to the United States on May 5, 1980.[2] Approximately ten days later, James W. Moorman, counsel for the United States, informed OCC by letter of Dr. Picciano's findings and demanded that OCC agree to finance a follow-up chromosome study and temporary relocation of certain Love Canal area residents (Item 273, Exh. 3). After the substance of the

Picciano study became public, Donald L. Baeder, President of Hooker Chemical Company, responded to the United States' letter (Item 273, Exh. 4). Baeder's letter, dated May 17, 1980, said, in part, that:

Hooker is willing to cooperate with the EPA in addressing this issue, even though Love Canal has not been under our control for more than 27 years and we deny any legal liability. As a matter of fact, we have already started our own investigations and analysis using the best experts available. We will keep you advised of our progress in these investigations and look forward to your prompt reply.

Mr. Baeder also enclosed with his letter a copy of a Hooker press release, also dated May 17, 1980, which elaborated on the company's efforts in studying the Picciano findings:

Hooker's own medical and environmental staff as well as outside consultants are leaving no stone unturned to obtain a reliable fact base on Love Canal. Mr. Baeder further stated, "we are prepared to make available our own staff as well as independent medical and genetic experts to work with the EPA to resolve this matter as quickly as possible."

Id.

Two days later, Toxicologist Dr. Marvin Legator, who had identified a "potential expert" by OCC on May 16, was retained by the company (Item 280, affidavit of Steven K. Yablonski [Yablonski Affidavit], ¶ 5).[3]

Thereafter, on May 21, 1980, partially as a result of the anxiety precipitated in the Love Canal community by the publication of the Picciano Study, United States President Jimmy Carter issued the so-called "second emergency declaration," authoriz-

---

**1.** The United States also requested Dr. Legator to produce and deliver certain documents pursuant to Rules 30(b) and 45(b) of the Federal Rules of Civil Procedure.

**2.** The Picciano Study noted that chromosomal abnormalities were observed in 11 of 36 Love Canal residents examined. It cautioned, how-

ever, that "in the absence of a control population, prudence must be exerted in the interpretation of such results."

**3.** Dr. Legator had been hired by OCC/Hooker to conduct toxicological studies of the company's chemicals on at least one prior occasion. See Item 273, Exh. 5.

ing federal financing for what ultimately became the permanent relocation of hundreds of families from the Love Canal area.

In June and July of 1980, OCC counsel advised counsel for the United States that the company would not produce the Legator report regarding the Picciano Study because this document was protected as "attorney work product" (Item 273, Exh. 6) and "clearly exempt from discovery" (*id.* at Exh. 7). Following, in the July 26, 1980, edition of *The Washington Post* and July 27, 1980, edition of *The Buffalo News,* Dr. Legator was quoted as being of the opinion that the results of the Picciano Study "will stand up to any scrutiny" (*id.* at Exhs. 8 and 9). The same edition of the *Post* also reported Dr. Legator as saying that criticisms of Dr. Piciano's techniques were "a lot of bunk." According to the August, 1980, issue of *Science,* Dr. Legator "disputed" certain "technical criticisms" about the Picciano Study made by others (*id.* at 10). On September 30, 1980, *The Niagara Falls Gazette* quoted Dr. Legator as saying that he "would not at all discount [Picciano's] findings" (*id.* at Exh. 11).

Finally, in the spring of 1981, Dr. Legator spoke with Dr. Adeline Levine, Associate Professor of Sociology at the State University of New York at Buffalo, who was then writing a book about the Love Canal. Dr. Levine's book, entitled *Love Canal: Science, Politics, and People,* was published in 1982 and included a description of her conversations with Dr. Legator about the validity of the Picciano Study (*id.* at Exhs. 12–15).

OCC now contends that, pursuant to Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure, the United States should not be allowed to depose Dr. Legator. It moves for a protective order on several grounds.

First, OCC argues that Dr. Legator was retained by the company in connection with the instant litigation. *See* Item 255, Affidavit of Anthony L. Young [Young Affidavit]. The company states that, because it does not intend to call Dr. Legator as a witness at trial, the discovery of facts known or opinions held by Dr. Legator is governed by the provisions of Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure. Rule 26(B)(4)(B) provides, in pertinent part, that:

> [a] party may discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

*Cf., Inspiration Consolidated Copper Co. v. Lumbermens Mutual Casualty Co.,* 60 F.R.D. 205, 210 (S.D.N.Y.1973).

OCC argues that the United States has failed to make the proper showing of "exceptional circumstances" here. *See, e.g., Barnes v. City of Parkersburg,* 100 F.R.D. 768, 769–70 (S.D.W.Va.1984). The company argues that, because the United States has already retained and/or consulted with at least nine experts concerning the Picciano study, it is not "impracticable" for the United States to obtain the information possessed by Dr. Legator by other means. *See, e.g., Galella v. Onassis,* 487 F.2d 986, 996 n. 13(h) (2d Cir.1973).

Alternatively, OCC argues that if this court believes that the Legator deposition and document discovery should not be barred pursuant to Rule 26(b)(4)(B), the company contends that such discovery should be deferred pending the United States' response to OCC's "Second Set of Interrogatories and Related Document Requests" because many of the interrogatories and document requests relate directly to the Picciano Study and President Carter's emergency declaration. OCC says that the interests of fairness and justice require that the company be given an opportunity to obtain and review the requested documents before any examination of Dr. Legator.

In opposition, the United States makes various arguments (Item 273). First, the

United States claims that the taking of Dr. Legator's deposition is not premature or inappropriate (*id.* at pp. 2–10). Second, it argues the Legator Deposition is not precluded by Rule 26(b)(4)(B). More specifically, the United States contends that OCC has failed to carry its burden of showing that Dr. Legator was retained by OCC "in anticipation of litigation or preparation for trial," *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir.1984), and that good cause for a protective order exists here. *Cf., United States v. Hooker Chemicals & Plastics Corp.,* 90 F.R.D. 421, 425 (W.D.N.Y.1981).

The United States says that OCC cannot properly avail itself of the protection of Rule 26 because Dr. Legator was retained for an ordinary business purpose rather than for this litigation. The federal government premises this view upon OCC President Donald Baeder's statement in May of 1980 that the company was "willing to cooperate with the EPA" on the Picciano issue and promised to "keep [the United States] advised of [its] progress in these investigations...."

According to the United States, the mere fact that this litigation has already commenced does not automatically establish a protected status for Dr. Legator's work. *Galambus v. Consolidated Freightways Corp.,* 64 F.R.D. 468, 482 (N.D.Ind.1974).

Indeed, the United States urges that if Dr. Legator's opinions were formulated with pending litigation in mind, *but with independent business reasons in mind as well,* this material cannot qualify for work product protection. *See United States v. International Business Machines Corp.,* 66 F.R.D. 154, 169 n. 25, 171, 175 n. 34, 176 (S.D.N.Y.1974); *Soeder v. General Dynamics Corp.,* 90 F.R.D. 253 (D.Nev.1980). *But see Hermsdorfer v. American Motors Corp.,* 96 F.R.D. 13, 15 (W.D.N.Y.1982); *Scott Paper Co. v. Ceilcote Co.,* 103 F.R.D. 591, 594–97 (D.Me.1984).

In this case, the United States urges that Mr. Baeder's offer to cooperate and share the fruits of its investigation of the Picciano study constitutes a non-litigation purpose which does not come within the ambit of Rule 26(b)(3) and (b)(4). Accordingly, the United States urges that the Legator deposition is not entitled to protection from discovery.[4]

Secondly, the United States argues that even if Rule 26(b)(4)(B) protection was originally available to OCC, it has since been waived by the company. The United States contends that this protection has been explicitly waived with respect to the public statements which Dr. Legator has made to the press and Professor Levine. Moreover, the United States says that these statements can be properly seen as a general

---

4. In its Surreply (Item 283), the federal government also argues that OCC's present position as to the reason Dr. Legator was retained is marked by significant inconsistencies. More specifically, it takes issue with the company's present position that because the representations made in Mr. Baeder's letter of May 17, 1980, were made solely in an "attempt to induce the government not to seek preliminary relief" (Item 279, p. 11), Dr. Legator cannot be properly deposed now. The federal government says that such "efforts to fend off litigation remedies" are not privileged. *See, e.g., Grumman Aerospace Corp. v. Titanium Metals Corp.,* 91 F.R.D. 84, 90 (E.D.N.Y.1981).

The United States also argues that this court should reject OCC's suggestion that the representations of the company president regarding the purpose of Dr. Legator's hiring should not be determinative now. Yablonski Affidavit, ¶ 5; Item 279, Exh. 5; Third Affidavit of Anthony L. Young [Third Young Affidavit], ¶¶ 2, 9.

Further, the United States takes issue with OCC's argument that its offer to cooperate with the government in investigating the Picciano Study was merely an "offer" which was never accepted. It argues that such contract law analysis has no place in this litigation where the only relevant question is whether, at the time the work was performed, OCC intended it to be protected.

The United States contends that, even if this court were to accept OCC's claim that its view of the function of Dr. Legator's work changed on May 21, 1980, with President Carter's emergency declaration, the evidence shows that Dr. Legator was retained prior to that date, and, evidently, that he performed his review of the Picciano Study for OCC before that time. *See* Yablonski Affidavit, ¶ 5; Third Young Affidavit, ¶¶ 2–4.

waiver of the privilege surrounding the subject of Dr. Legator's opinions regarding the Picciano study. *Peck v. United States,* 514 F.Supp. 210, 212–13 (S.D.N.Y.1981), *appeal dismissed,* 680 F.2d 9 (2d Cir.1982). In addition, the United States argues that, because OCC did not take the necessary precautions to protect against disclosure of its confidential communications with Dr. Legator, the company must now comply with the federal government's discovery requests. *Suburban Sew 'N Sweep, Inc., v. Swiss-Bernina,* 91 F.R.D. 254 (N.D.Ill. 1981).

The United States also claims that any privilege which might have surrounded the opinions of Dr. Legator regarding the Picciano study has been waived by implication in accordance with the logic of *Haymes v. Smith,* 73 F.R.D. 572 (W.D.N.Y.1976). *See also Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975). The federal government says that by setting up the affirmative defense that the government's costs at Love Canal were improperly incurred because they were based, in part, upon the allegedly flawed Picciano study, the company implicitly waived the privilege surrounding the opinions of Dr. Legator. Alternatively, the federal government argues that the case of *In re Sealed Case,* 676 F.2d 793, 811 (D.C.Cir.1982), extends the same doctrine to "opinion work product" where, as here, the societal interest in truth-seeking would be served thereby.[5]

Another argument proposed by the United States is that Dr. Legator can be properly deposed as a first-hand "actor-viewer" of the Picciano laboratory, which conducted the disputed study. *See, e.g., Tahoe Insurance Co. v. Morrison-Knudsen Co.,* 84 F.R.D. 362, 364 (D.Idaho 1979). Finally,

the United States says that even if Dr. Legator's opinions do not fall within the ambit of Rule 26(b)(4)(B), he may be deposed because of the existence of exceptional circumstances in this case (Item 273, Exh. 20, Affidavit of Frode Ulvedal). More specifically, the federal government claims that because Dr. Picciano's consulting firm has been disbanded and his laboratory facilities are evidently no longer in existence, Dr. Legator's deposition is now necessary and proper.[6]

OCC disagrees and believes that the United States' position is neither supported by legal authority or the facts of this case. First, the company argues that Dr. Legator was retained solely in connection with this litigation. *Healy v. Counts,* 100 F.R.D. 493, 496 (D.Colo.1984); *Hermsdorfer v. American Motors Corp., supra.* Item 279, Exh. 4, Affidavit of Dr. Mitchell Zavon [Zavon Affidavit], ¶¶ 2–3; Third Young Affidavit, ¶¶ 2–4.

Second, OCC says that there was no express or implied waiver of the privilege covering Dr. Legator's review of the Picciano Study because only OCC, as the holder-beneficiary of the privilege, could have waived this privilege, and did not do so here. *Healy v. Counts, supra. Accord, Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984). *See also Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1222–23 (4th Cir.1976); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105–06 (S.D.N.Y.1985).[7]

Third, OCC says that the observations of an expert who views potential evidence in his expert capacity for use in connection with litigation is not subject to discovery, especially where the evidence, as here, was viewed by others, including the United

---

**5.** The United States also states that, because OCC has repeatedly leveled charges of misconduct against the federal government regarding alleged "mishandling" of the Picciano Study, the federal government is now properly entitled to the discovery of the findings and conclusions of OCC's own expert about this same study.

**6.** According to the federal government, only five persons—including Dr. Legator—had actually seen the Picciano slides and laboratory (Item

283, Exhs. 5 and 6). It argues that Dr. Legator is "the only expert ... about whom OCC can say nothing about a lack of objectivity." *Id.* at 37. As such, it argues that his deposition should be permitted.

**7.** The federal government says, further, that Dr. Legator has an individual interest in confidentiality in this case and that he has, in fact, waived this interest.

States' own employees. For the same reasons, OCC says that no exceptional circumstances can be found in the present case because of the lack of necessity. Item 279, pp. 25–26.

■ In light of all of the above arguments, I find OCC's arguments to be persuasive here. First, I believe that the evidence in the record adequately indicates that Dr. Legator was primarily retained by Hooker in connection with the present litigation. *See* Young Affidavit, ¶ 2; Yablonski Affidavit, ¶ 5; Zavon Affidavit, ¶¶ 2–3; Third Young Affidavit, ¶¶ 2–4, 9. I do not believe, as the federal government argues, that the letter of Hooker President Donald L. Baeder and the company press release dated May 17, 1980, warrant a different conclusion. Instead, I believe that those representations excerpted and relied on by the United States in the context of the present motion indicate that this court should hold, as did Judge Elfvin in *Hermsdorfer v. American Motors Corp., supra,* that OCC is entitled to Rule 26(b)(4)(B) protection, absent a showing of exceptional circumstances. *See also Grindell v. American Motors Corp.,* 108 F.R.D. 94 (W.D.N.Y.1985).

■ I find that no such circumstances exist here. As both parties concede, the United States has consulted with a number of experts regarding the Picciano Study. *See* Item 279, pp. 23–26; Item 283, ¶¶ 34–39. Because the evidence shows that several of these experts have, like Dr. Legator, seen both the slides and Picciano laboratory, I believe that the United States can adequately prepare its case without discovery of the Legator information.

■ Finally, I find that OCC has not waived its Rule 26(b)(4)(B) protection regarding the opinions of Dr. Legator, either explicitly or implicitly. As OCC correctly has pointed out, only the company, as holder of the protection at issue, can waive such protection. It is clear that a waiver of this type did not occur here. *Healy v. Counts, supra.*

Therefore, OCC's motion for a protective order is hereby granted.

So ordered.

## SUPPLEMENTAL ORDER NO. 7

### ON MOTION TO DEPOSE EXPERT

Plaintiffs in this action now bring a motion pursuant to Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure for an order permitting them to depose defendant Occidental Chemical Corporation's [OCC] expert, William E. Cutcliff (Items 393 and 394). OCC opposes (Item 395).

Defendant OCC submitted the affidavit of William E. Cutcliff as part of its supplemental filings on the plaintiffs' pending Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601, *et seq.* [CERCLA] and common law summary judgment motions (Item 388, dated September 16, 1986).[1] OCC stated that it was necessary to make this late filing (less than two weeks prior to the originally scheduled argument date) in order to bring to this court's attention and to discuss the relevance of "information and documents which [OCC] did not before possess or realistically have access to" and that "virtually all of this data is information generated by the plaintiffs" (Item 390, letter of attorney Thomas H. Truitt, dated September 14, 1986). For purposes of the instant motion, Mr. Cutcliff's affidavit consists of his hydrogeological evaluation of the Love Canal area, in which he asserts that parties other than OCC were solely responsible for the release of OCC's hazardous substances at Love Canal (Item 391). He summarized on pages 17–18 of his affidavit that:

[I]t is my opinion that the OCC waste disposal facilities were secure and covered at the time of the transfer of the Canal property to the City, and that *the escape of chemically contaminated groundwater from the Love Canal to the adjacent backyards and basements of houses, and to the surrounding sew-*

1. The original Cutcliff affidavit was also docketed separately by this court as Item 391.

*ers, was caused by direct and indirect third-party incursions.* Removing portions of the cover material, alteration, and disturbance of the cover, direct construction in the Canal and construction projects in the nearby areas not only led to direct migration of leachate, but a complete reversal of the hydrogeologic regime, setting the stage for migration at various points along the length of the Canal. Indirect incursions significantly shortened the distance and travel times between the disposal site and the basements of adjacent houses and other structures.

*Id.* (emphasis added).

Plaintiffs now argue that the Cutcliff affidavit is the first definite statement by OCC of the way, in its view, third parties allegedly caused OCC's chemical wastes to flow out of the Love Canal. Accordingly, the plaintiffs say that it would be manifestly unfair to allow OCC to introduce this new expert opinion without giving them the opportunity to depose Mr. Cutcliff in order to "clarify" his opinion. Moreover, plaintiffs say that Mr. Cutcliff's deposition would assist the court in evaluating his affidavit in connection with the upcoming summary judgment motions.

Plaintiffs argue that the case law supports their position. In particular, plaintiffs rely on the case of *Cox v. Commonwealth Oil Co.*, 31 F.R.D. 583, 584 (S.D. Tex.1962). In *Cox,* decided before the 1970 adoption of Rule 26(b)(4) of the Federal Rules of Civil Procedure, a district court ordered that an expert who had filed a summary judgment affidavit was ordered to be deposed. The court said that "[w]hen a party offers the affidavit of an expert witness in opposition to, or in support of, a motion for summary judgment, it waives its right not to have the deposition of said expert taken." *Id.* The logic of this case, as plaintiffs point out, was recently explained in the case of *North Georgia Lumber & Hardware v. Home Insurance Co.*, 82 F.R.D. 678, 680 (N.D.Ga.1979). Further, plaintiffs say that the reasoning of *Cox* is in accord with the main principle of the current rule that discovery should be permitted of an expert who has or will testify in a case. *Cox v. Commonwealth Oil Co.*, 31 F.R.D. at 584; *see also Dennis v. BASF Wyandotte Corp.*, 101 F.R.D. 301, 303 (E.D.Pa.1983); Rule 26(b)(4)(A).

The plaintiffs concede that Rule 26(b)(4)(A) does not explicitly address the situation in the instant case—where an expert testifies by affidavit prior to trial—but say that the overall purpose of Rule 26 requires that discovery be allowed in such a case. Item 394, page 6. Plaintiffs' reason in this regard that:

> Experts who testify by affidavit in pretrial proceedings are no different from trial witnesses. In both cases the expert testifies. In both cases the opposing party is entitled to discovery in order to respond effectively to the expert's opinion or to clarify that opinion.

*Id.* at 6–7.

Put another way, plaintiffs argue that Mr. Cutcliff is no mere consultant who may or may not play a role in this litigation. They say that he has already entered the judicial arena by offering an affidavit in connection with the upcoming summary judgment motions. *Cf. United States v. Hooker Chemicals and Plastics Corporation,* CIV–79–990C, W.D.N.Y. September 11, 1986 ("Legator Motion"). Further, plaintiffs say that the practice of deposing experts who submit affidavits in connection with a summary judgment motion is common in CERCLA cases and other cases that involve the submission of expert affidavits. *United States v. Stringfellow,* CIV–83–2501 (C.D.Cal. September 23, 1986) (wherein plaintiffs' expert, who submitted an affidavit in support of summary judgment, was subjected to extensive depositions). *Id.* at 7–8. Plaintiffs also contend that the case of *United States v. General Motors Corp.,* 99 F.R.D. 610 (D.D.C.1983), cited by OCC, is inapposite to the instant case. *Id.* at 9.

Finally, plaintiffs take issue with defendants' representations to this court that the Cutcliff affidavit was filed so close to the scheduled oral argument dates on the sum-

mary judgment motions because the company did not have the necessary information until only a short time ago. According to plaintiffs, of the 45 documents comprising the 40 exhibits attached to OCC's supplemental filing (Item 388), a vast majority are OCC documents, publicly available documents, or documents produced by the local defendants. *Id.* at 11. Plaintiffs also say that, of the 16 documents that were produced exclusively by the plaintiffs, *all* were produced for defendant on or before October 25, 1985. *Id.* at 11–12. *See also* Item 397, Affidavit of Joyce Babcock Hoffman.

Further, plaintiffs say that although OCC's attorney stated at the September 15, 1986, status conference with this court that at least one of the documents was produced by plaintiffs as recently as July, 1986, a copy of this document was, in fact, produced on December 19, 1984. Item 394 at 12. Given all of the above, plaintiffs say that defendant has set forth no adequate reason to explain why the Cutcliff affidavit was submitted at this late date, two years after submission of the United States' CERCLA summary judgment motion, one year after the deadline for the submission of OCC's final brief on CERCLA and six months after its final common law brief.

Plaintiffs say they should properly be allowed to depose Mr. Cutcliff, on a limited basis, between October 9–17, 1986. At the same time, plaintiffs note that they have followed this court's direction by filing a number of questions with defendant which they wished Mr. Cutcliff to answer.[2] However, they maintain that a deposition would best serve the interests of justice here.

In response, OCC makes the following arguments: First, the company contends that despite plaintiffs' arguments to the contrary, plaintiffs do not want a deposition of Mr. Cutcliff in order to get "clarification" of his position, but to cross-examine him prior to any potential court appearance. OCC says that plaintiffs should not be allowed to do this.

Second, OCC argues that the plaintiffs' request for the Cutcliff deposition is inconsistent with the theory and practice of Rule 56 and plaintiffs' own claims that summary judgment is appropriate because there are no material facts in dispute. The company contends that if, as plaintiffs say, there are no disputed facts, there is no reason for a deposition. Alternatively, OCC says that if plaintiffs take issue with Cutcliff's affidavit, they should properly seek permission to respond by counter-affidavit. *See United States v. General Motors Corporation, supra* at 613.

Third, OCC argues that plaintiffs have failed to make the showings required by Rule 26(b)(4)(A) and (B) for discovery of OCC's expert. Because the company says that it has not yet decided whether Mr. Cutcliff will need to be called to testify at trial, plaintiffs must satisfy the "exceptional circumstances" standard of Rule 26(b)(4)(B). *Hoover v. Department of the Interior,* 611 F.2d 1132, 1141 n. 12 (5th Cir.1980); *United States v. Hooker Chemicals and Plastics Corporation, supra.*

In response to plaintiffs' argument that Rule 26(b)(4)(B) is not applicable here because Mr. Cutcliff has already offered "testimony" in this action, OCC says that plaintiffs' reliance on the *Cox* decision is misplaced. The company says that 1) prior to 1970, Rule 26 did not address the subject of expert witnesses, as it currently does; 2) *Cox* is not instructive because it does not address whether the expert in that case was to be a witness at trial, and that "no case on this point has been found," *Cox v. Consolidated Oil Co., supra* at 584; and 3) even if *Cox* could be read as equating Cutcliff's affidavit with his expected testimony at trial, plaintiffs must still satisfy the requirements of Rule 26(b)(4)(A), which they have failed to do here.

OCC notes that Rule 26(b)(4)(A) states that discovery of expert opinion "may be

---

**2.** OCC expert Cutcliff has filed a supplemental affidavit in response to these questions (Item 399).

obtained only" by filing interrogatories concerning the expert's testimony. The company also noted that "[u]pon motion, the court may order further discovery by other means...."

OCC interprets this language to say that plaintiffs must first pursue the "clarification" they desire by way of written interrogatories, and only then by other means, if this court deems appropriate. Defendant says that plaintiffs have not followed this course and have not made a showing to warrant exceptional relief such as they request here.

Finally, OCC submits that plaintiffs' motion should be denied because it may very well result in a further delay of the presently scheduled summary judgment arguments. The company argues that a two-day deposition of Mr. Cutcliff could raise new issues that would result in yet further discovery requests, either by OCC or plaintiffs. Further, OCC says that it would be fundamentally unfair to permit plaintiffs' discovery on their own motions without affording OCC the same rights in defense.

In light of all of the above arguments, I believe that plaintiffs should be allowed to conduct a one-day deposition of Mr. Cutcliff to obtain clarification of this expert's opinion. This will aid this court in resolving the upcoming summary judgment motions.

■ This court is concerned about the lateness of OCC's filing of the original Cutcliff affidavit (Item 391). As is made clear above, OCC had possession of all of the documents attached as exhibits to their supplemental filing (Item 388) as of October of 1985. *See* Item 397, affidavit of Joyce Babcock Hoffman. Because this court has permitted OCC make this filing 11 months later—just on the eve of the scheduled oral argument dates on the plaintiffs' summary judgment motions—I believe that Mr. Cutcliff's expert opinion must be made clear at this time.

I believe that a deposition of Mr. Cutcliff is not barred by either Rule 26 or the applicable case law. The Advisory Committee Notes to Rule 26(b)(4) indicate that "expanded" and "broadened" discovery of experts is permitted where this testimony is found to be important to the case. Rule 26 also gives the trial judge the discretion to order discovery in addition to interrogatories where it is equitable to do so.

I find that the case of *Cox v. Commonwealth Oil Co., supra,* to be persuasive here in this regard. Although the *Cox* case cited by plaintiffs was decided prior to 1970 (and the adoption of Rule 26(b)(4)), it has been cited in recent years as good law. *North Georgia Lumber & Hardware v. Home Insurance Co., supra.* Further, I believe that the *General Motors* case cited by OCC is simply not on point. As the plaintiffs argue, the court in *General Motors* denied a request to depose not because the proposed deponents were experts, but because it would cause delay where an emergency safety threat existed.

This is not the situation here. While this court is mindful of the strong public interest in resolving this case as promptly as possible, it also recognizes that the complicated and novel issues must be adequately developed so that this court can ultimately make a fair and proper determination.

Because I believe that the opinion of Mr. Cutcliff may have a significant impact on the outcome of the plaintiffs' upcoming summary judgment motions, I find that plaintiffs should properly be permitted to conduct a one-day deposition of Mr. Cutcliff before October 17, 1986, or as soon thereafter as possible.[3] The plaintiffs are directed to limit their questions during examination to the substance of Mr. Cutcliff's two sworn affidavits now filed with the court (Items 391 and 399) in order to obtain clarification of his expert opinion regarding this material. Thereafter, the parties are directed to submit whatever additional filings they wish to make with this court by

---

**3.** This one-day deposition shall include the direct examination, cross-examination, and redi-  rect examination of Mr. Cutcliff.

October 24 so that oral argument on the plaintiffs' CERCLA summary judgment motions, now scheduled for October 27—28, will not be delayed further.

Plaintiffs' motion is granted.

So ordered.

