**BURLINGTON CITY BOARD OF EDUCATION, A Body Corporate of the State of North Carolina, Plaintiff,**

v.

**UNITED STATES MINERAL PRODUCTS COMPANY, INC., Defendant.**

**No. C–85–1256–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

March 12, 1987.

Charles F. Blanchard, Donald R. Strickland, Raleigh, N.C., Louis C. Allen, Jr., Burlington, N.C., for plaintiff.

J.A. Gardner, III, Gregory C. York, Charlotte, N.C., for defendant.

## ORDER

RUSSELL A. ELIASON, United States Magistrate.

Defendant moves for a protective order restricting the use of the video depositions which plaintiff has taken of defendant's expert witnesses. Rule 26(c), Fed.R.Civ.P. A previous Order permitted video depositions of defendant's corporate officers and expert witnesses. It generally set out conditions concerning the recording of the depositions but not with respect to their use before, at, or after trial. Defendant's expert, Robert N. Sawyer, M.D., was deposed in January of this year and, according to defendant, was video taped over its objection. (No objection has previously been presented to the Court.) Defendant contends that the deposition should not be shown to any person or attorney not directly involved in the specific litigation for which the deposition was taken. The expert himself requests that the deposition not be made available to other persons. To that end, defendant also wants the video depositions returned to their experts after this matter is concluded.

Plaintiff vigorously opposes the motion. Dr. Sawyer is apparently à well known expert witness in asbestos property damage cases on behalf of numerous manufacturers. Plaintiff argues that due to the large number of similar lawsuits across the country, sharing video depositions of expert witnesses will greatly facilitate the handling of these cases and provide needed economic savings. The Court agrees that plaintiff's attorneys will be better able to assess any expert witness by viewing a video deposition as opposed to reviewing a stenographic transcript. Also, deposing experts can be expensive. In this case, Dr. Sawyer billed plaintiff $200.00 per hour for his deposition which eventually amounted to a $1,000.00 fee. Defendant has not shown that sharing the video deposition will cause any particular embarrassment or oppression to Dr. Sawyer or any other expert.

### Discussion

Video depositions are becoming an increasingly familiar part of the judicial landscape. While they were once regarded with some caution, if not aversion, the tide has now shifted in the other direction. Just recently this Court granted an Order permitting the video taping of all depositions. *Rice's Toyota World, Inc. v. Southeast Toyota Distributors, Inc.*, 647 F.R.D. 114 (M.D.N.C.1987). In *Rice's Toyota, supra*, the Court extensively reviewed the copious authorities which have countenanced video depositions. In general, video depositions provide greater accuracy and trustworthiness than a stenograhic deposition because the viewer can employ more of his senses in interpreting the information from the deposition. The major reservation in granting a blanket video deposition order concerns the extra costs video depositions may impose.

■ The present controversy should, if anything, serve to assuage even that reservation—*i.e.,* that video depositions may be too expensive. While video depositions may impose additional costs on the parties, permitting video depositions of experts can, in the long run, reduce litigation costs in general. The high cost associated with deposing expert witnesses can be curtailed by allowing plaintiffs to share information with plaintiffs in other cases. The courts considering the matter have overwhelmingly and decisively endorsed the sharing of discovery information among different plaintiffs, in different cases, in different courts. *Kamp Implement Co., Inc. v. J.I. Case Co.,* 630 F.Supp. 218 (D.Mont.1986) (collecting cases); *Cipollone v. Liggett Group Inc.,* 106 F.R.D. 573, 586 (D.N.J. 1985) (collecting cases); *U.S. v. Hooker Chemicals & Plastics Corp.,* 90 F.R.D. 421, 426 (W.D.N.Y.1981). The sharing of information between even diverse plaintiffs promotes speedy, efficient and inexpensive litigation by facilitating the dissemination of discovery material necessary to analyze one's case and prepare for trial. It reduces repetitious requests and depositions, thereby conserving even defendant's time and expense in having to respond or attend the deposition. It conserves judicial resources by reducing the number of discovery motions and disputes. Permitting plaintiffs to share information helps counterbalance the effect uneven financial resources between parties might otherwise have on the discovery process, thereby protecting economically modest plaintiffs faced with financially well off defendants and improving accessibility to justice. *Id.* Defendants will not be heard to complain that sharing information will burden their defending similar type lawsuits. *U.S. v. Hooker Chemicals & Plastics Corp., supra.* To some extent, that result is both a desired and expected consequence of the expediting and evening process which sharing produces. "[C]ollaboration among plaintiffs' attorneys ... comes squarely within the purposes of the Federal Rules of Civil Procedure." *Id.* at

426. Of course, the Court must be vigilent to prevent abuse, such as by a plaintiff's attempt to use present discovery in order to assist him or counsel in another lawsuit. *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405, 410 (N.D.N.Y.1973). Nevertheless, it is the party seeking the Rule 26(c) protective order who bears the burden of establishing with a specific factual showing both the need for a protective order and the harm ensuing without one, should he wish to prevent the sharing of discovery material. *Id.; Kamp Implement Co., Inc., supra.* Any protective order entered should be narrowly tailored to fit the situation and even confidential material should be shared when possible. *Cipollone, supra.*

■ Because video depositions provide a better means of assessing a witness, including an expert witness, it is even more imperative that the parties be able to share them as opposed to stenographic depositions. Nor does the Court see any problem in the fact that the depositions may have been taken for discovery purposes as opposed to being taken for use at the trial. As discussed in *Rice's Toyota, supra,* ample authority and reason support permitting video depositions solely for discovery purposes.

Defendant's final ground for the protective order alleges oppression, but fails to delineate any specific prejudice or oppression which will arise should the expert witnesses' video depositions remain unrestricted. As with any kind of discovery, the Court necessarily is interested in ensuring video depositions will not unduly burden or oppress a party or witness. However, the party seeking the order must present concrete reasons justifying a protective order against video depositions and may not rest on unverified fears. For example, in *Westmoreland v. CBS, Inc.,* 584 F.Supp. 1206 (D.C.1984), *aff'd,* 770 F.2d 1168 (D.C.Cir. 1985), a newsworthy witness moved for a protective order, alleging that the news network had an ulterior purpose for seeking a video deposition in order to accumu-

late potentially attractive broadcast material for its archives and noted a pattern of video taping all prominent former government officials. The network refused to unequivocally promise not to broadcast the deposition, but merely stated it had no present plans to do so and would abide by any conditions set by the court. As a result, the witness foresaw endless future attempts to bring the deposition out from under seal. The witness opined that the spectacle of a former United States Ambassador and Director of the CIA being interrogated under oath in a quasi-adversarial setting could be both demeaning to him and inimical to the national interests, and perhaps expose him to personal risk. The court found these reasons persuasive and entered a protective order.

In the present case, defendant does not present any reasons which even approach the concerns found by the court in *Westmoreland, supra.* Nothing indicates plaintiff intends to use the video depositions in a non-judicial manner or for an ulterior purpose. Nor is there anything inherently oppressive in plaintiff's contemplated use of the deposition by sharing it with plaintiffs in other cases. To the contrary, the Court would encourage all parties to share their video depositions. Without denigrating defendant's expert's natural, if not innate, aversion over the invasion of personal privacy which goes with sharing his image in a video deposition, the Court is simply not willing to sanction it. Some personal privacy necessarily must give way to the more general interest of our society in promoting better and more efficient judicial proceedings. Sharing video depositions is such an instance. Without a clear demonstration of hardship or oppression, the Court will not entertain protective orders against video depositions in order to protect a generalized concern of personal privacy.

IT IS THEREFORE ORDERED that defendant's motion for a protective order is denied.