Barbara J. HEALY, et al., Plaintiffs,

v.

Franklin L. COUNTS, et al., Defendants.

Civ. A. No. 82–K–115.

United States District Court,
D. Colorado.

Jan. 30, 1984.

Susan G. Barnes, Branney, Hillyard, Ewing & Barnes, Englewood, Colo., for plaintiffs.

William Horan, Denver, Colo., for Franklin Counts.

F. Michael Ludwig, Denver, Colo., for Rickman, Smith, McCarty and Routt County Emergency Services Bd.

John L. Breit, Denver, Colo., for Madelyn Johnston Rogers.

Marc R. Brosseau, Weller, Friedrich, Hickisch, Hazlitt & Ward, Denver, Colo., for Franklin L. Counts.

David R. Brougham, Hall & Evans, Denver, Colo., for Town of Hayden and Kurt Douglas Cruickshank.

Robert R. Montgomery, Montgomery, Little, Young, Campbell & McGrew, P.C., Englewood, Colo., for Routt Memorial Hosp., Inc.

Peter W. Pryor, Pryor, Carney & Johnson, Englewood, Colo., for Douglas C. Shenk, M.D.

Donald G. Peterson, Denver, Colo., for Michael Lyle Maxson.

Paul D. Cooper, Denver, Colo., for David B. Paul, M.D.

Arthur S. Bowman, Sr., Denver, Colo., for Harry Peroulis, Michael Maxson & Franklin L. Counts.

Richard W. Laugesen, DeMoulin, Anderson, Campbell & Laugesen, P.C., Denver, Colo., for Harry J. Peroulis.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This diversity case comes before me on plaintiff's motion for reconsideration of the magistrate's ruling that the defendants can endorse as witnesses two experts whom plaintiffs had consulted as advisory witnesses. The pertinent facts are as follows.

Plaintiffs' decedent was severely injured when the truck in which he was riding overturned in the high mountains outside of Craig, Colorado. He was carried out of the gulley where he had landed and transported back to civilization in a private car by some of the defendants. He was transferred to an ambulance driven, operated and owned by yet other defendants, and taken to Routt County Memorial Hospital where still more defendants undertook emergency medical care and rescusitation. Plaintiffs' decedent died at the hospital approximately eight hours after the truck accident.

During the preparation of this case, plaintiffs' counsel consulted two expert witnesses who, for a fee, reviewed the records from the Routt County Hospital with an eye to determining whether there had been medical malpractice by either the emergency room staff or in the operating room. Both experts, Drs. Rosen and Clark, concluded that there had been no malpractice.

As it turned out, Rosen was and is a friend of John Breit, counsel for defendant Madelyn Rogers. In the course of discussing an unrelated case, Breit asked Rosen to review the treatment Healy received in the Routt County Hospital. After glancing at the records, Rosen realized he had reviewed the same case for plaintiffs' counsel, and so informed Breit. He also related his expert opinion as to the lack of malpractice by Breit's client. Dr. Rosen's affidavit continues:

> Although I stated to Mr. Breit that I would not review the file on behalf of his client I did state that I had no objection to testifying in court to the opinion that I had reached and related to Plaintiffs' counsel. The reason that I refused to review the file on behalf of Mr. Breit's client was that I felt that it would be unethical to accept two expert witness fees for the same opinion.

> Mr. Breit was uncertain as to whether he could call me as an expert witness at trial but stated that if I had no objection he would subpoena me and allow the Court to decide the issue.

> I have no hesitation whatsoever testifying with regard to my opinions in this case. I have never been influenced by the interests of the person who pays me a fee for those opinions. Had Mr. Breit requested my services prior to Plaintiffs' counsel, I would have provided the same opinion. In fact, I have frequently provided adverse opinions to Mr. Breit when he has requested my services on behalf of his clients.

Defendant Rogers later endorsed Dr. Rosen as a lay witness "to testify concerning opinions provided to Plaintiffs' counsel." *Plaintiffs' Exhibit* 1.

Robert Montgomery, attorney for the Routt County Memorial Hospital, contacted

Dr. Clark, apparently hoping to be able to use him as an expert witness. Dr. Clark told Montgomery that he had already reviewed the case for plaintiffs' counsel and that there had been no malpractice committed by Dr. Paul, the lead surgeon who treated Healy at the hospital. Dr. Clark was uncertain that he should talk with Montgomery. He "asked for reassurance that it would be appropriate to do so. Under the circumstances mentioned above, that assurance was given by me [Robert Montgomery]." *Montgomery Affidavit* at 1.

Montgomery met with Dr. Clark on July 11, 1983. Together, they reviewed the medical records and Dr. Paul's deposition which plaintiffs' had provided to Dr. Clark. Dr. Clark has apparently billed Mr. Montgomery for the consultation, but, at least as of August 25, 1983, has not been paid. *Kudla Affidavit* at 2. Dr. Clark has been endorsed as an expert witness for defendant Paul.

The magistrate, after hearing argument, denied plaintiffs' motions to strike the endorsements of Drs. Clark and Rosen as witnesses. Plaintiffs appeal and I reverse the magistrate's order.

I begin my analysis by recognizing that this case presents an issue that is beyond the explicit language of rule 26(b)(4)(B), Fed.R.Civ.P. That rule in part provides

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Here, defendants argue that since the identity of Drs. Clark and Rosen were discovered without chicanery and without the discovery process, there can be no requirement that they prove "exceptional circum-

stances" before being allowed to call the doctors as witnesses. Plaintiffs say that permitting such ex parte contact and endorsement "without the knowledge or permission of plaintiff's counsel will have the undesirable effect of chilling the cooperation of expert witnesses and limiting the access of parties to expert witnesses, particularly in medical malpractice cases where peer pressure often operates to discourage expert witnesses from becoming involved in professional negligence cases." *Plaintiff's Motion to Strike* at 2.

As I review the case law and articles available to me, I find that there is virtually nothing in print to guide my decision. A review of those authorities may still be helpful. The advisory committee's notes to rule 26 are void of any reference to the problem. 48 F.R.D. 487, 504 (1970). Professor Graham, in his otherwise persuasive article, says only that "[u]sually a retained or specially employed expert will refuse to speak voluntarily with an opposing party, even if he is neither morally nor legally bound not to do so."[1] Graham, *Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part One, An Analytical Study,* 1976 U.Ill.L.F. 895, 933 (1976). Cases decided under rule 26(b)(4)(B) invariably are concerned with whether particular circumstances are or are not "extraordinary" within the meaning of the rule. *See, e.g., Heitmann v. Concrete Pipe Machinery,* 98 F.R.D. 740 (E.D.Mo.1983); *National Union Elec. Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 494 F.Supp. 1257 (E.D.Pa. 1980).

■ The Tenth Circuit has recently considered the general scope and intent of rule 26(b)(4)(B) in *Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496 (10th Cir.1980). Following C. Wright and A. Miller, *Federal Practice and Procedure,* § 2029 at 250–51 (1970), the *Ager* court divided experts into four categories. This case is concerned with only two:

1. Professor Graham refers the reader to *Boynton v. R.J. Reynolds Tobacco Co.,* 36 F.Supp. 593, 595 (D.Mass.1941) and *Hickey v. United States,* 18 F.R.D. 88, 89 (E.D.Pa.1952), among others. *See* 1976 U.Ill.L.F. at 933 n. 147.

Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. . . .

\*  \*  \*  \*  \*  \*

Experts informally consulted in preparation for trial but not retained. . . .

622 F.2d at 500–01. Whether a particular expert has been consulted informally or in anticipation for trial is a question of fact in the first instance for a judge to decide. As the *Ager* court put it:

In our view, the status of each expert must be determined on an *ad hoc* basis. Several factors should be considered: (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and (4) the terms of the consultation, if any (*e.g.,* payment, confidentiality of test data or opinions, etc.). Of course, additional factors bearing on this determination may be examined if relevant.

622 F.2d at 501.[2] Once the court determines a particular expert's status, the extent of permissible discovery follows naturally. In the case of an expert found "to have been only informally consulted in anticipation of litigation, discovery is barred." 622 F.2d at 502. In the case of an expert retained or specially employed in anticipation of litigation, his

identity, and other collateral information . . . is not discoverable except as 'provided in Rule 35(b) or upon a showing of exceptional circumstances upon which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.'

622 F.2d at 503, quoting rule 26(b)(4)(B).

■ Should experts in either of the above categories whose identities are dis-

covered by happenstance as opposed to formal discovery be treated any differently? I think not, and therefore reverse the magistrate's decision. My decision is guided by several policy decisions. As the Tenth Circuit noted,

[t]he possibility also exists, although we do not suggest it would occur in this case, or that it would be proper, that a party may call his opponent to the stand and ask if certain experts were retained in anticipation of trial, but not called as a witness, thereby leaving with the jury an inference that the retaining party is attempting to suppress adverse facts or opinions.

622 F.2d at 503. The instant case in fact goes beyond the scennario envisioned by the *Ager* court, in that the defendants here intend to call Drs. Clark and Rosen to testify. In an Arizona state case, that actually happened, but defense counsel was forbidden to mention the fact "of the previous consultation with plaintiff's counsel." *Granger v. Wisner,* 134 Ariz. 377, 656 P.2d 1238, 1242 (1982). I do not agree that such a restriction on defense counsel would adequately protect the plaintiffs here. As the plaintiff's argued in *Granger, supra:*

If the plaintiff sought to attack the expert's qualifications or credentials, he might well have some concern that the defendant would attempt to rehabilitate the witness by showing that plaintiff's counsel had thought well enough of the witness to consult him on this very case. . . . Further, he might be put in the position of having to impeach the expert's testimony by showing it differed in some material way from statements made in the report that the same consultant had made to plaintiff's counsel. Other types of examination might unintentionally open the door to mention of the prior consultation.

2. This is a slightly different formulation than that ordered by Professor Graham, who suggests that an expert

would be considered informally consulted if, for any reason, the consulting party did not consider the expert of any assistance. A

consulting party may consider the expert of no assistance because of his insufficient credentials, his unattractive demeanor, or his excessive fees.

1976 U.Ill.L.F. at 940 n. 182.

656 P.2d at 1243. I agree with the *Granger* court that "[c]ross-examination is a difficult art which is not made easier when counsel must perform it on a tightrope." 656 P.2d at 1243. Permitting defendants in this case to call Drs. Rosen and Clark could only have that effect.

Second, I am concerned about the potential impact permitting Drs. Rosen and Clark to testify would have on the pool of potential expert medical witnesses. I believe it " 'would inevitably lessen the number of candid opinions available as well as the number of consultants willing to even discuss a potential medical malpractice claim with counsel....' " 622 F.2d at 503.

Finally, to construct a rule for happenstance that differs from the rule of discovery as set out in rule 26 and the *Ager* opinion is an invitation to permit "happenstance" to replace the formal strictures of discovery. I am not suggesting that happened here. Counsel for the defendants in this case have conducted themselves with the highest degree of ethical propriety, in accordance with the very high standards of this court.

Magistrate Schauer made no findings of fact in ruling on plaintiffs' motions. I decline to make any findings with respect to the status of Drs. Clark and Rosen, since it appears to me that defendants never were arguing that they were entitled to the doctors testimony on the basis of exceptional circumstances.

IT IS THEREFORE ORDERED that the magistrate's order is reversed.