In the Matter of VESTAVIA ASSOCIATES LIMITED PARTNERSHIP, a Connecticut Limited Partnership, Debtor.

Bankruptcy No. 89–0259–8B1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 15, 1989.

Don M. Stichter, Tampa, Fla., for debtor.

Mark J. Wolfson, Tampa, Fla., for Centrust Sav.

W. Keith Fendrick, Tampa, Fla., for Anchor Sav. & Loan.

ORDER ON CENTRUST SAVINGS BANK'S MOTION TO STRIKE TESTIMONY

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon the Motion to Strike Testimony of an Expert Witness filed by Centrust Savings Bank (Centrust), a mortgagee of the Debtor. The Debtor is a limited partnership owning two apartment houses. There are three mortgages on the property. Centrust has the first mortgage on one particular apartment house.

A number of lengthy hearings have been held on motions filed by all parties concerning the use of cash collateral and relief

from the automatic stay. Throughout these hearings, a major issue has been the value of the two apartment houses. At an earlier hearing on the use of cash collateral, this Court determined the value of the two particular apartment complexes. Centrust had not participated in presenting evidence. At a later hearing on motions to lift the stay, Centrust was prepared to put on its expert appraisal witness, but withdrew the expert witness from testifying. Instead Centrust relied on the Court's previous determinations on value and cash collateral. Debtor's counsel, prepared to cross examine the expert as to value, sternly objected to the withdrawing of the expert witness. Throughout these hearings Debtor has called only its general partner to testify as to value by way of a form of the income approach. It is apparent Debtor was relying extensively on its cross examination of Centrust's expert witness to bring about a redetermination of value. Thus, the Debtor intended Centrust to be hoisted on its own petard.[1]

The Debtor did not have the opportunity at this hearing to examine Centrust's expert as the expert had conveniently left the courthouse. This Court ruled on the motions to lift the stay and for adequate protection, but scheduled an additional hearing to allow the Debtor to seek to elicit the testimony of Centrust's expert witness if permissible under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

On June 7, 1989, the Debtor subpoenaed Centrust's expert witness retained to value the specific apartments subject to their mortgage. Upon service of the subpoena, Centrust filed a motion for protective order. Over Centrust's objection, the Court conditionally denied the motion for protective order and allowed the expert to testify as to value. This Court, however, at the time of hearing the expert witness' testimony reserved ruling on Centrust's motion to strike the expert's testimony. In order to decide the Motion to Strike, this Court must decide whether a party who would have had limited discovery of an opponent's expert witness under Fed.R.Civ.P. 26, may call that expert witness either as their own or as an adverse witness. Fed.R.Civ.P. 26(b)(4) establishes the parameters of discovering the opinions of opposing party's expert witnesses. Identity of an expert expected to be called at trial may be discovered through interrogatories. Through the same medium, the sum and substance of the expert's opinion may be gleaned. Fed. R.Civ.P. (26)(b)(4)(A)(i). Further, limited discovery may be allowed thereafter by the Court. Fed.R.Civ.P. 26(b)(4)(A)(ii). If the expert has been retained in anticipation of trial but will not be called as a witness, however, Rule 26 limits discovery to exceptional circumstances where the ability of the party to gather such information is impractical. Fed.R.Civ.P. 26(b)(4)(B); 4 J. Moore, J. Lucas, and G. Grother, Jr., *Moore's Federal Practice* § 26.66; and 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2032.

■ Clearly, the Debtor has not utilized the mechanisms of Rule 26 to discover the substance of the expert's opinion. The expert witness, once withdrawn by Centrust, would have to be classified as an expert under Fed.R.Civ.P. 26(b)(4)(B), retained in anticipation of trial but not expected to testify.[2] It is within Centrust's preogative to withdraw the witness and by its strategy limit Debtor's discovery.

Plaintiff contends that defendant's re-characterization of Schulenberger as a non-witness was solely to avoid discovery and constitutes a gross abuse of the federal rules. This argument, however, is without merit. The defendant is permitted to execute the trial strategy it deems appropriate to defend its case; this extends to changing the status of an expert, which thereby narrows the scope of discovery. See, Bailey v. Meister Brau, Inc., 57 F.R.D. 11, 13–14 (D.Ohio.1972).

---

1. *See,* W. Shakespeare, *Hamlet,* Act III, Scene IV, "For 'tis the sport to have the engineer hoist with his own petard."

2. Considering the facts of this case, the Court does not believe the policy consideration would change if the expert would have been considered under Fed.R.Civ.P. 26(b)(4)(A).

Since Schulenberger will not testify and plaintiff has alternate sources of expert information in this case, there is no reason to disregard Rule 26(b)(4)(B) ...

*Mantolete v. Bolger,* 96 F.R.D. 179, 182, n. 2 (D.Ariz.1982). The *Mantolete* Court held the notice of the change in expert witness status was given sufficiently in advance of a scheduled deposition. This Court does not believe that Centrust's decision in the middle of a final evidentiary hearing changes the analysis, nor does it equate to abuse of the Federal Rules. By the time of the final evidentiary hearing discovery had been closed. The Debtor had its opportunity to proceed under Fed.R.Civ.P. 26 in accordance with the Order Setting Final Evidentiary Hearing.

In similar yet rare circumstances, federal courts have considered the issue at hand. In *Healy v. Counts,* 100 F.R.D. 493 (D.Colo.1984), plaintiff's two experts had found no medical malpractice by the defendants. Defendants inadvertently learned of the expert witnesses opinion and sought to have them testify for the defense. The magistrate denied plaintiff's motion to strike these experts as defendant's witnesses. The district court reversed. The court considered a number of policy considerations espoused by the Tenth Circuit Court of Appeals in *Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496 (10th Cir.1980).

The Tenth Circuit Court of Appeals in *Ager* and the District Court in *Healy* were concerned that allowing the testimony of expert witnesses discovered by happenstance but who could not have been formally discovered would cause a distortion of the trial process. A jury might think evidence is being hidden if a party seeks to elicit testimony from an opponent regarding why experts were not produced at trial. Experts may be dissuaded from testifying if they thought they would be whipsawed between parties.[3] Lastly, "the formal strictures of discovery" might be destroyed where the expert witness' identity had been

determined by happenstance. A hybrid of Fed.R.Civ.P. 26 allowing discovery by happenstance would not meet the policy concerns underlying Fed.R.Civ.P. 26.

The Tenth Circuit Court of Appeals had an additional occasion to consider this problem in *Durflinger v. Artiles,* 727 F.2d 888 (10th Cir.1984). The plaintiff had retained an expert as a consultant, designated the expert as a witness for trial, and then changed its mind. Upon learning this information, the defendant contacted the expert requesting a copy of the report prepared for plaintiff's counsel. In *Durflinger,* unlike *Healy* and *Ager,* there was a specific violation of Fed.R.Civ.P. 26. The Court concluded, however, the expert would have been classified as "an expert who has been retained or specially employed by another party in anticipation of litigation." *Durflinger, supra* at 891; Fed.R.Civ.P. 26(b)(4)(B). "The rule is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *Durflinger, supra* at 891. The Court hinted at the possibility a trial court might not have to exclude the testimony of such witness under different circumstances. Those circumstances were not eluded to by the Court.

The obverse side of these decisions begins with *Granger v. Wisner,* 134 Ariz. 377, 656 P.2d 1238 (Ariz.1982). There, the trial court permitted the opposing party's expert to testify for the defense, but prohibited defense counsel from inquiring into the previous consultation.[4] Defense counsel appears to have obtained information about the expert during pretrial discovery. No impropriety as to the discovery rules was identified by the court. More germane to the court's decision was the defense's listing of the expert witness and plaintiff's waiting until the third day of trial before objecting to the expert being called as a defense witness.

In *Granger,* the concerns of the *Ager* and *Healy* court were acknowledged. The court specifically pointed out the concern in

**3.** cf. *Kaufman v. Edelstein,* 539 F.2d 811 (2nd Cir.1976); *Carter–Wallace, Inc. v. Otte,* 474 F.2d 529 (2nd Cir.1972).

**4.** See also, *Sun Charm Ranch, Inc. v. City of Orlando,* 407 So.2d 938 (Fla. 5th DCA, 1981).

*Healy* that while restricted from exploring the expert's prior consultation, the plaintiff's ability to impeach this expert is distorted.

> While the risk of undue prejudice to a party in the position of plaintiff in this case is substantial and may make it proper in some situations for the court to entirely preclude the witness, Ariz.R. Evid. 403, we do not believe that the trial court's action in the case at bench was at all unreasonable. Plaintiff had numerous opportunities to raise an objection to the use of this expert.

*Granger*, 134 Ariz. at 387, 656 P.2d at 1248.

*Steele v. Seglie*, No. 84–2200, slip op., 1986 WL 30765 (D.Kan. Mar. 27, 1986), is similar to *Granger*. In *Steele*, plaintiff had contacted three doctors to examine plaintiff's daughter. At a deposition the defendant found out the child had undergone a physical examination at a hospital and thereafter requested the hospital to produce documents. Part of the documents produced were the expert witnesses' reports prepared for plaintiff's counsel. Plaintiff sought to suppress the testimony of the physicians. The defendant had taken the deposition of the expert witnesses. Rather than filing a motion for protective order prior to the depositions, plaintiff's counsel raised an objection at the time of taking of the deposition. There is no doubt plaintiff's counsel did nothing to curtail defense counsel's activities to elicit testimony from plaintiff's expert witnesses. In fact, plaintiff's counsel actually noticed the deposition of one of these experts. The District Court of Kansas acknowledged the factual similarities with *Healy* yet declined to follow *Healy*. The Court noted that in both *Granger* and *Ager*, the courts acknowledged that Fed.R.Civ.P. 26(b)(4)(B) "does not address itself to the admissibility at trial of the testimony of such an expert which is elicited by the opponent." *Steele, supra; Granger*, 134 Ariz. at 377, P.2d at 1242; *Ager* at 503. *Steele* further focuses on *Ager* where the Court "acknowledged this distinction and expressly reserved the question of whether a party 'may attempt to compel an expert retained or specially employed by an adverse party in anticipation of trial, but whom the adverse party did not intend to call, to testify at trial.' 622 F.2d 503 and n. 6." *Steele, supra.*

The District Court in *Steele*, while agreeing with the *Healy* court's concerns, disagreed that identities and discovery of expert witnesses, whether through formal discovery or happenstance, should be treated differently. The Court reiterated the *Healy* court concerns, stating

> we [sic] are convinced that such difficulties can be avoided through careful limitations on the type of questions allowed to be posed to these experts. For example, the *Granger* court allowed a similar expert to testify only 'with the restriction that defense counsel could not mention the fact of the previous consultation with plaintiff's counsel. This restriction was proper because the fact of the prior consultation for the plaintiff was irrelevant to the issue of negligence.' *Granger*, 134 Ariz. at 656, P.2d at 1242.

*Steele, supra.*

The District Court stated any problem could be resolved by requiring the defense to insure its expert did not mention the earlier consultations and restricting plaintiff from impeaching the expert witness by showing discrepancies between trial testimony and earlier written reports provided to plaintiff. The defense would also be prohibited from seeking to rehabilitate plaintiff's expert witnesses by showing that the plaintiff had retained the witness initially. Rule 403 of the Federal Rules of Evidence, said the District Court, would "prevent defendants from resorting to this rehabilitative technique." *Steele, supra.*

Clearly, the courts have come to two different policy conclusions regarding opponents calling opposing parties' expert witnesses. The first line of cases illustrated by *Healy* would require preservation of the policy behind Fed.R.Civ.P. 26(b)(4)(B) in order to prevent an aberration to the discovery and trial process under such a set of facts. *See*, 4 J. Moore, J. Lucas, and G. Grother, Jr., *Moore's Federal Practice* § 26.66[4]; 8 C. Wright and A. Miller, *Federal Practice and Procedures* § 2032. It

is quite apparent from review of the cases and treatises the concept of Fed.R.Civ.P. 26(b)(4)(B) was based on fairness. Notwithstanding the probable complexities suggested by *Healy*, its purpose was in the first instance to thwart the attempts of parties to use opponents' experts to establish their affirmative case.

The second line of decisions exhibited by *Steele* and *Granger* suggests a more open policy which discounts the application of Fed.R.Civ.P. 26(b)(4)(B), believing that once the horses are out of the barn, it is far better to build a new corral. Admittedly, in these cases counsel's failure to timely object to the use of experts reinforced this broad evidentiary policy.

While the parties may know of the opinions of the "undiscoverable experts", a jury may not. Thus, *Steele* would invoke awkward rules which might fend off the foreseen predicaments which may arise at trial. Such post-discovery gerrymandering of Rules may equally cause the lighting of the fuse to a later debacle in the midst of a jury trial.

Judges, more than most lawyers and laymen would appreciate, are called upon to make decisions on issues where there are two or more opposing but equally cogent arguments. From the judge's experience as an attorney as well as a jurist, and after reviewing the law and the arguments of counsel, he or she may have to rely on judicial hunch.

> Now what is he saying but that the vital, motivating impulse for the decision is an intuitive sense of what is right and wrong for that cause, and that the astute judge, having so decided, enlists his every faculty and belabors his laggard mind, not only to justify that intuition to himself, but to make it pass muster with his critics?

Hutcheson, *The Judgment Intuitive: The Function of 'Hunch' in Judicial Decision,*

14 Corn.L.Q. 274 (1929). Such acknowledgement of this form of intuition is not rare.[5] Recently, Judge Letts of the Florida District Court of Appeals focused on its use.

> All three of these arguments are compelling and I have vacillated back and forth on whether to vote for affirmance or reversal. In the end result, my version of common sense, faulty though the appellant may find it, tells me that the language employed was not clear.

*Reed v. State Department of Transportation,* 503 So.2d 920, 921 (Fla. 4th DCA 1987) quoting B. Cardozo, *Paradoxes of Legal Science, reprinted in* R. Aldisert, *The Judicial Process,* 814 (1976).

At this juncture, the Court calls on such judicial intuition.

Under the facts in this case, *Healy* is the better view. A jury trial is not the case at bar. Here there is something more fundamental. A debtor unwilling to expend available funds to obtain its own expert witness seeks to use the expert of an opposing party. Centrust's expert who originally may have been discoverable under Fed.R.Civ.P. 26(b)(4)(A) is not now discoverable. The Debtor is also seeking to impeach other parties' expert witnesses' testimony. In order for the Debtor to have utilized Centrust's expert witness even at the late stage of the hearing, it must prove exceptional circumstances as if Fed.R. Civ.P. 26(b)(4)(B) applied.[6]

Unlike trials in the state and federal district courts, a bankruptcy court may hear testimony on the same subject matter on more than one occasion and within different contexts. The same expert may be used to determine value for adequate protection, for relief from automatic stay, for cash collateral, confirmation, and even for dismissal. The same witness might testify on value within the context of an adversary

---

5. *Laitram Corp. v. Deepsouth Packing Co.,* 301 F.Supp. 1037, 1063 (E.D.La.1969); *see also, Kessler v. Pennsylvania Nat'l Mutual Casualty Insurance Co.,* 531 F.2d 248 (5th Cir.1976); *Lansdale v. Tyler Junior College,* 470 F.2d 659 (5th Cir. 1972); *Perkins v. Endicott Johnson Corp.,* 128 F.2d 208 (2nd Cir.1942).

6. Possibly, a buffer to this happenstance occurrence could take place by having an early discovery conference under Fed.R.Civ.P. 26(f).

proceeding on fraudulent transfer or preference. Even though the bankruptcy courts have the ability to limit repetitive evidence, such an evaluation cannot take place without some revisiting of the expert's prior testimony. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352 (9th Cir.1986). Therefore, the identity of an expert opinion may be widely known at a stage later than discovery. It may be appropriate at some time in the bankruptcy proceedings to allow a party to call opposing parties' expert witness. Any permission at that later stage would have to be predicated upon the calling party establishing the expert witness' identity and opinion without violating the rules of discovery. Further, there could be no unfairness associated with the utilization of the testimony. The Court finds under the facts in this case that the underlying policy of fairness does not allow the Debtor to use Centrust's expert to prove the Debtor's affirmative case as to value. Therefore, Centrust's Motion to Strike should be granted.

The failure to properly object to the utilization of such an expert, the violation of the rules of discovery, or the use of the expert during a jury trial may require a different analysis predicated on the concerns and solutions announced by the various courts mentioned herein.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED Centrust's Motion to Strike Testimony of an Expert Witness is granted.

DONE AND ORDERED.