Batyah Levi AGRON, Plaintiff,

v.

The TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Defendant.

No. 88 CIV. 6294 MJL.

United States District Court, S.D. New York.

Nov. 10, 1997.

Douglas W. Dunham, New York City, for Plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, L.L.P. by John D. Geelan, New York City, for Defendant.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court is the motion *in limine* of Plaintiff Batyah Levi Agron ("Plaintiff") to preclude proposed expert testimony and the expert's report at trial. For the reasons stated below, Plaintiff's motion is denied.

---

1. Between 1965, the year she withdrew from Columbia, and 1986, the year she applied for readmission, Plaintiff enrolled in several courses

## BACKGROUND

In September 1988, Plaintiff commenced this discrimination action under the Rehabilitation Act of 1973, 29 U.S.C. § 794, against The Trustees of Columbia University in the City of New York ("Defendant"). Plaintiff first attended Columbia University in 1947. She obtained a leave of absence from Columbia in 1949 and resumed classes in 1959. Plaintiff alleges that in 1963, before she completed her undergraduate studies, she was the victim of a physical assault on Defendant's campus, which eventually forced her to withdraw from Columbia in 1965. Plaintiff applied for readmission in 1977, and, according to Defendant, was rejected on academic grounds on October 27, 1977. Plaintiff again applied for readmission both in 1984 and 1985, and each time was denied. Plaintiff applied for readmission for the last time in 1986. Defendant's denial of that application in July 1986 forms the basis for this action. Plaintiff alleges that she was denied readmission to Columbia based solely upon her physical and emotional handicaps in violation of the Rehabilitation Act, 29 U.S.C. § 794. Defendant denies having had any knowledge of Plaintiff's alleged emotional handicaps in 1986. Defendant claims that its decision to deny Plaintiff readmission in 1986 was based on Plaintiff's twenty-five year academic history.[1]

In 1994, during the course of this litigation, Plaintiff retained Dr. Leonard J. Deutsch ("Deutsch") as a psychiatric expert. Plaintiff provided Deutsch with extensive background material, including medical records from as far back as 1948, and correspondence between Plaintiff and Defendant, including the application materials Plaintiff submitted to Defendant for readmission to the University. Deutsch also examined Plaintiff for psychiatric evaluation on April 4 and 5, 1994. Based on his review of the provided materials and the two-day examination, Deutsch prepared a three-page expert report ("Deutsch Report"), dated June 1, 1994, which he provided to Plaintiff. *See* Dunham Aff., Ex. A. In his report, Deutsch concluded that the documen-

at Hunter College and Rockland Community College.

tary material that he reviewed "revealed a person who is highly disorganized, frequently rambling and, at times, delusional. Much of the material revealed a lack of insight and was, at times, highly inappropriate." *See id.* at 1. The Report described Plaintiff's manner during the examination as "confused, disorganized and delusional." *See id.* at 2. Deutsch diagnosed Plaintiff as suffering from chronic paranoid schizophrenia, but noted that Plaintiff could have continued her academic studies despite her psychiatric problems. *See id.* at 3.

In 1994, in response to Defendant's supplemental interrogatories, Plaintiff provided Defendant with a copy of the Deutsch Report and designated Deutsch as an expert witness she intended to call at trial. In July 1995, however, Plaintiff retained another psychiatric expert, Dr. Ari Kiev ("Kiev"). Kiev rendered an expert report to Plaintiff on July 25, 1995 ("Kiev Report"), in which he concludes that Plaintiff suffers from Post Traumatic Stress Disorder as a result of the 1963 physical assault on Plaintiff on Defendant's campus. *See* Pl.'s Reply Mem., Ex. 1, at 1. Kiev further concludes that Plaintiff does not suffer from chronic schizophrenia and finds no evidence of any thought disorder, delusions, or hallucination. *See id.* at 1–2. Plaintiff subsequently provided Defendant with a copy of the Kiev Report and designated Kiev as a testifying expert witness. Neither Deutsch nor Kiev have been deposed in this action.

Defendant has never designated an expert witness to testify about Plaintiff's psychiatric condition. In September 1996, the period during which the parties were preparing the Joint Pretrial Order, Plaintiff informed Defendant that she elected to withdraw Deutsch as an expert. *See* Def.'s Opp'n Mem. at 2. Plaintiff did not designate Deutsch as a testifying witness in the Joint Pretrial Order. Defendant, however, listed Deutsch as a "nonexpert" witness whom it intends to call at trial. *See* Joint Pretrial Order, at 41–42. Defendant also included the Deutsch Report on its trial exhibit list. Defendant maintains that it has never contacted Deutsch at any time during this litigation. *See* Def.'s Opp'n Mem. at 3. Plaintiff seeks to preclude De-

fendant from: (1) calling Deutsch, either as an expert or a non-expert witness, at trial, and (2) introducing the Deutsch Report as a trial exhibit.

## DISCUSSION

### I. *Dr. Deutsch Is An Expert Witness*

In the Joint Pretrial Order, Defendant designates Deutsch as a non-expert, or fact, witness. *See* Joint Pretrial Order at 41–42. Defendant maintains that it "does not intend for Dr. Deutsch to be its expert." *See* Def.'s Opp'n Mem. at 3. Plaintiff contends that, as a threshold matter, the Court should reject Defendant's attempt to introduce Deutsch as a non-expert witness. *See* Pl.'s Mem. at 5. The Court agrees.

The only information Deutsch possesses which is pertinent to this case was obtained in his role as an expert. Deutsch was specifically retained in preparation of litigation and examined Plaintiff in his role, not as a treating physician, but as a psychiatric expert. In that limited role, Deutsch developed opinions regarding Plaintiff's mental and emotional states, opinions which have been synthesized in his expert report and which will form the basis for any testimony he may give at trial. Thus, Deutsch is clearly an expert in that he brought his technical expertise to bear in examining both Plaintiff and relevant documents and offering his opinion based upon those examinations. Deutsch does not forfeit his expert status merely because he learned facts, in addition to forming an expert opinion, through his personal observations. *See Bank Brussels Lambert v. Chase Manhattan Bank,* 175 F.R.D. 34, 42–43 (S.D.N.Y.1997); *Chiquita Int'l Ltd. v. M/V Bolero Reefer,* No. 93 Civ. 0167, 1994 WL 177785, at *1 (S.D.N.Y. May 6, 1994); *see also Delcastor, Inc. v. Vail Associates, Inc.,* 108 F.R.D. 405, 408 (D.Colo. 1985) (rejecting defendant's designation of engineering consultant as "fact" witness where the "reasonableness, consistency and credibility of [expert's] 'facts' testimony may be effected by his opinions," especially when the facts "are based partially on subjective observations and are, therefore, to a degree, tainted by [expert's] opinions."). According-

ly, if Defendant intends to call Deutsch as a witness in this case, it shall be only as an expert.

## II. Applicability of Rule 26(b)(4)(B)

█ Federal Rule of Civil Procedure 26(b)(4)(B) ("Rule 26(b)(4)(B)") provides that a party may conduct *discovery* of an expert:

who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4)(B).[2] Thus, Rule 26(b)(4)(B) limits discovery of consultative, as opposed to testifying, experts. The rule is intended to allow litigants to consult experts in order to evaluate a claim "without fear that every consultation with an expert may yield grist for the adversary's mill." *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458, 460 (S.D.N.Y.1995). This policy, however, has "little or no application" where the party has allowed discovery of its expert without objection. *See id.; see also Steele v. Seglie*, No. 84–2200, 1986 WL 30765, at *4 (D.Kan. March 27, 1986) (finding that Plaintiff's failure to properly object to depositions of its non-testifying experts constituted waiver of Rule 26(b)(4)(B) restrictions); *see generally Dovel v. Walker Mfg.*, No. CV95–3172, 1996 WL 910027, at *2 (D.Neb. Oct.18, 1996) (holding that, where defendant withdrew testifying expert after discovery, expert's opinions are not secret and there is no concern "of the plaintiff 'leaching' case preparation

information from her adversary."); *Gilly v. New York*, 69 N.Y.2d 509, 516 N.Y.S.2d 166, 168, 508 N.E.2d 901, 902–03 (1987) (holding that plaintiff may call defendant's expert because "[o]nce a physician's report has been reduced to writing and served on the adversary, it ceases to be for the exclusive use of defendant. At that point both sides have access to this probative evidence and there is no basis for withholding it from the trier of fact.")

█ The Court finds Rule 26(b)(4)(B) inapplicable to Plaintiff's motion. First, the Rule governs limitations on *discovery*. The instant dispute, however, does not concern discovery matters, but rather the trial testimony of Deutsch. " 'The rule does not address itself to the admissibility at trial of the testimony of such an expert which is elicited by the opponent.' " *Steele*, 1986 WL 30765, at *3 (quoting *Granger v. Wisner*, 134 Ariz. 377, 656 P.2d 1238, 1242 (1982)); *see also Fenlon v. Thayer*, 127 N.H. 702, 506 A.2d 319, 321 (1986) (holding that state rule, modeled after Rule 26(b)(4)(B), does not control admissibility of opponent's consultative expert's testimony at trial). Second, Defendant neither abused the discovery process nor obtained the Deutsch Report through happenstance. Rather, Plaintiff voluntarily provided Defendant with a copy of the Deutsch Report and disclosed Deutsch's opinions in response to Defendant's interrogatories. Thus, Plaintiff, by submitting the Deutsch Report to Defendant in discovery, voluntarily waived the only relief that Rule 26(b)(4)(B) provides—the non-disclosure of expert discovery for a non-testifying expert. Because the Court finds Rule 26(b)(4)(B) inapplicable,[3] the "exceptional circumstances" stan-

---

2. Federal Rule of Civil Procedure 35(b) authorizes the discovery of written reports rendered pursuant to court ordered medical or physical examinations. *See* Fed.R.Civ.P. 35(b). Because the Court never ordered an examination pursuant to Rule 35 in this case, that provision is inapplicable to these proceedings.

3. Plaintiff cites several cases for the proposition that withdrawn experts should be regarded as non-testifying experts under Rule 26(b)(4)(B). *See* Pl.'s Mem. at 9–10. None of those cases, however, involved a moving party who had voluntarily disclosed the expert discovery, as Plain-

tiff did here. *See, e.g., In re Shell Oil Refinery*, 132 F.R.D. 437, 440–41 (E.D.La.1990) (evaluating plaintiff's request for *discovery* of defendant's withdrawn experts under Rule 26(b)(4)(B)); *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (precluding defendant from calling at trial plaintiff's withdrawn expert where plaintiff never permitted expert discovery and defendant obtained expert report by directly contacting expert, in violation of Rule 26(b)(4)(B)). In *In re Vestavia Assocs. Ltd. Partnership*, 105 B.R. 680, 681–84 (Bankr.M.D.Fla.1989), cited by Plaintiff, the creditor withdrew its expert before any discovery of the expert had occurred. The court

dard of that rule does not govern this dispute. The Court, therefore, must determine the admissibility of Deutsch's testimony and report under the relevant Federal Rules of Evidence. *See Rubel,* 160 F.R.D. at 460–61 (finding that, absent a discovery abuse under Rule 26(b)(4)(B), expert testimony dispute is governed by Federal Rule of Evidence 403).

### III. *Balancing Under Rule 403* [4]

■ One of the primary concerns of any trial court is the desire for probative information and the search for truth. Naturally, such a truth-finding mission favors the admission of testimony by an expert who could assist the trier of fact in determining complex issues. *See House v. Combined Ins. Co.,* 168 F.R.D. 236, 247 (N.D.Iowa 1996); *Rubel,* 160 F.R.D. at 459 (citing *Gilly,* 516 N.Y.S.2d at 167, 508 N.E.2d 901). The Court, however, must also consider any alleged prejudicial effects of admitting certain relevant evidence. *See* Fed.R.Evid. 403. The Court must be mindful that certain evidence might be so prejudicial as to outweigh its probative value to the jury. *See id.*

### A. *Probative Value of Deutsch's Testimony*

■ Plaintiff has not challenged the relevance or probativeness of Deutsch's testimony. Nevertheless, the Court will briefly address one of the concerns raised in *Rubel v. Eli Lilly and Co.,* 160 F.R.D. 458 (S.D.N.Y. 1995), in this context. In *Rubel,* the defendant retained a medical expert and offered no objection to the taking of the expert's deposition and the disclosure of his report. *See Rubel,* 160 F.R.D. at 459. In the pretrial

order, however, the defendant did not designate the expert as a trial witness. *Id.* Plaintiff then subpoenaed the expert for trial. *Id.* After explaining why Rule 26(b)(4)(B) is inapplicable in such circumstances, the Court weighed the prejudice of allowing the expert's testimony against its probative value. *Id.* at 460. The court noted that where an expert possesses unique evidence, the probative value of that testimony is enhanced. *See id.* However, because the expert's testimony in that case would have overlapped the testimony of plaintiff's two other experts, the court found the testimony to be cumulative, other than for the fact of the prior retention by defendant. *See id.* at 460–61. The court relied upon that fact as one of the principle reasons for denying the plaintiff's request to call the expert at trial. *See id.* at 462. By contrast, Deutsch's testimony will not be cumulative of other testimony, as Defendant has not designated any other experts to testify at trial. The Court must then determine whether the prejudice of permitting Deutsch to take the stand outweighs the probativeness of his testimony.

### B. *Prejudice*

Plaintiff argues that she will suffer irreparable prejudice if Deutsch takes the stand and reveals that he was previously retained by Plaintiff in this litigation. *See* Pl.'s Mem. at 7. Plaintiff further argues that this prejudice will be enhanced by the content of Deutsch's opinions. *See* Pl.'s Mem. at 8.

#### 1. *Prejudice from Deutsch's Prior Retention*

■ Numerous courts have acknowledged the potentially substantial prejudice stem-

---

applied the policies of Rule 26(b)(4)(B) to preclude the debtor from calling its adversary's expert to testify at a hearing. Although the *Vestavia* court reasoned that the policy of fairness underlying Rule 26(b)(4)(B) should preclude the use of a withdrawn expert's testimony, the court noted that "[i]t may be appropriate at some time in the bankruptcy proceedings to allow a party to call opposing parties' expert witness. Any permission at that later stage would have to be predicated upon the calling party establishing the expert witness' identity and opinion *without violating the rules of discovery.*" *Id.* at 685 (emphasis added). Because Plaintiff here voluntarily permitted discovery of Deutsch's expert opinions and Defendant never violated any discovery rules

in obtaining those opinions, the Court finds Plaintiff's argument unpersuasive.

**4.** An analysis under Federal Rule of Evidence 403 ("Rule 403") assumes that Deutsch's expert testimony and report consists of relevant evidence which "will assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed.R.Evid. 402, 702. Although Plaintiff brings this motion pursuant to Rules 402 and 702, among others, Plaintiff fails to advance any arguments for the preclusion of the expert evidence under either of these provisions. Accordingly, the Court proceeds directly to a Rule 403 balancing test.

ming from testimony that reveals an expert's prior consultation with the opposing party.[5] *See Peterson v. Willie,* 81 F.3d 1033, 1037–38 (11th Cir.1996); *House,* 168 F.R.D. at 248; *Rubel,* 160 F.R.D. at 460 (characterizing prejudice from disclosure of prior retention to jury as "explosive") (citing 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure: Civil* § 2032, at 447 (1994)); *Healy v. Counts,* 100 F.R.D. 493, 496 (D.Colo.1984). If the fact of the prior retention is revealed, jurors may assume that Plaintiff's counsel tried to suppress or hide evidence which it considered unfavorable. *See Peterson,* 81 F.3d at 1037 (citing *Granger,* 656 P.2d at 1242–43); *Rubel,* 160 F.R.D. at 460.

■ The Advisory Committee Notes to Rule 403 provide, however, that, "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." 1972 Advisory Committee Notes to Fed.R.Evid. 403. Here, the Court could require Defendant to instruct Deutsch not to make any mention of his prior retention by Plaintiff and permit Deutsch to refer to his expert report without revealing that the report was rendered at Plaintiff's request. Courts have differed on the effectiveness of such a limiting instruction in this context.

In *Granger v. Wisner,* 134 Ariz. 377, 656 P.2d 1238 (1982), the court described the plaintiff's concerns over the ineffectiveness of a limiting instruction as follows:

even with the restriction imposed by the trial court, plaintiff was still in a difficult position when cross-examining the expert. If the plaintiff sought to attack the expert's qualifications or credentials, he might well have some concern that the defendant would attempt to rehabilitate the witness by showing that plaintiff's counsel had thought well enough of the

witness to consult him on this very case.... Further, he might be put in the position of having to impeach the expert's testimony by showing it differed in some material way from statements made in the report that the same consultant had made to plaintiff's counsel. Other types of examination might unintentionally open the door to mention of the prior consultation. Cross-examination is a difficult art which is not made easier when counsel must perform it on a tightrope.

656 P.2d at 1243. Despite plaintiff's concerns, the *Granger* court affirmed the trial court's decision to admit the testimony with the appropriate restriction on defense counsel's examination. *Id.*

This Court finds that the concerns raised in *Granger* are not sufficient to warrant exclusion of Deutsch's testimony and report. First, the Court's restrictions on defense counsel will apply to redirect as well as direct examination. Such a restriction eliminates any concern on Plaintiff's part that, if Plaintiff attacked Deutsch's credentials, Defendant will attempt to rehabilitate by alluding to Plaintiff's own retention of the expert in this litigation. *See Steele,* 1986 WL 30765, at *5 ("this restriction would prohibit defense counsel from attempting to rehabilitate any of their expert witnesses by showing that plaintiff's counsel had thought well enough of the witnesses to consult with them on this same case."). Defendant will not be permitted to engage in that line of examination. If, as Defendant argues, it is the substance of Deutsch's opinion which is important and not the fact of his prior retention, then Defendant should have no problem adhering to this restriction. *See House,* 168 F.R.D. at 248 ("The proper evidentiary issue remains [the expert's] opinion, not how he became involved in the case, as only the opinion serves the plaintiff's proper interests in discovering the truth of the plaintiff's claims."); *Steele,*

---

**5.** The Court recognizes that several courts have held that disqualification of a *consulting* expert is appropriate where the expert switches sides after receiving confidential information from the earlier retention. *See, e.g., Koch Refining Co. v. Jennifer L. Boudreau M/V,* 85 F.3d 1178, 1181 (5th Cir.1996); *Wang Lab., Inc. v. Toshiba Corp.,* 762 F.Supp. 1246, 1248 (E.D.Va.1991). These cases,

however, do not stand for the proposition that an expert should be precluded from testifying where his opinions were disclosed to all parties during discovery. Thus, the Court finds these cases inapposite. Furthermore, as the Court discusses below, Deutsch will not be permitted to testify concerning any of the circumstances of his prior retention by Plaintiff.

**452**

1986 WL 30765, at *5 ("this slight restriction on defendants' ability to rehabilitate these expert witnesses is the price defendants must pay for their right to present this testimony at trial."). If, on the other hand, Defendant finds that restriction to be an overwhelming burden, then Defendant can choose not to call Deutsch to the stand.

Second, although *Granger* suggests the contrary, Plaintiff may still impeach Deutsch's testimony by showing that it differed materially from statements made in his report. There is no need to refer to Deutsch's prior retention by Plaintiff in order to emphasize such inconsistencies. *See Steele*, 1986 WL 30765, at *4 (finding that plaintiff may impeach expert's testimony by showing that it differed materially from the expert's report without reference to whom the report was directed).

The *Rubel* court expressed an additional concern which this Court finds inapplicable in these circumstances. The plaintiff in Rubel planned to call two other experts in addition to the expert first retained by defendant. Thus, the Court found that, even if the lawyers and the witness refrained from referring to the expert's original retention, the jury was likely to conclude that the third expert was retained by the defendant. *See Rubel*, 160 F.R.D. at 461. Accordingly, the court refused to permit the expert's testimony even with a restriction on the scope of examination. *See id.* Here, however, the jury will hear only from Plaintiff's expert, Kiev, and Deutsch. In the absence of any reference to who retained Deutsch, the jury is more likely to conclude that Defendant, rather than Plaintiff, retained the expert that it called to testify at trial. Thus, the pitfalls of a limiting instruction identified in *Rubel* do not present themselves in our case.

Two recent cases have found a restriction on the scope of examination to be an effective limitation. In *Peterson v. Willie*, the plaintiff designated a psychiatric expert to testify at trial. 81 F.3d at 1036. At his deposition, the expert changed his opinion based on a second examination of plaintiff that plaintiff's counsel had not authorized. *Id.* Plaintiff subsequently withdrew the expert and sought to preclude his testimony at trial. *Id.* at 1036–

37. The trial court allowed the defendants to call the expert as a witness at trial and allowed the expert to testify as to his prior retention by plaintiff. *Id.* at 1037. The Eleventh Circuit found that the trial court erred in allowing defendants' counsel to elicit the fact of the prior retention because "the unfair prejudice resulting from disclosing this fact usually outweighs any probative value." *Id.* at 1038. The Court, however, did not find that the trial court had erred in permitting the expert to testify about his opinions. *Id.*

Likewise, in *House*, the court found that an instruction restricting the parties and the expert from referring to the circumstances of the expert's retention "can indeed avoid or largely eliminate the potential prejudice of disclosure to the jury." 168 F.R.D. at 248; *see also Steele*, 1986 WL 30765, at *4 (stating that, although permitting experts to testify could be prejudicial, "we are convinced that such difficulties can be avoided through careful limitations on the type of questions allowed to be posed to these experts."); *Fitzpatrick v. Holiday Inns, Inc.*, 507 F.Supp. 979, 980 (E.D.Pa.1981) (restricting examination of opposing party's expert to preparation of report and facts and opinions contained in report).

Plaintiff's reliance on *Healy v. Counts* does not dissuade the Court from its finding that an appropriate limiting instruction would avoid the alleged prejudice. The *Healy* court precluded two experts from testifying on the following three grounds: (1) the concerns raised in *Granger* of conducting cross-examination "on a tightrope"; (2) the effect that permitting such testimony would have on the pool of potential expert witnesses; and (3) the fairness in applying the standards of Rule 26 where an expert's opinions are obtained by an opponent through happenstance. *See Healy*, 100 F.R.D. at 497. This Court has found that the concerns raised in *Granger* are not sufficient to warrant exclusion of Deutsch's testimony. In addition, because Defendant obtained the Deutsch Report through formal discovery rather than by happenstance or by violation of discovery rules, the Court has found the standards of Rule 26 inapplicable in this case.

The *Healy* court was not the first to express concern that permitting an opponent to call at trial or even obtain the identity of another party's consulting expert would lessen the available pool of qualified experts. *See Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496, 503 (10th Cir.1980) (finding that involuntary "[d]isclosure of the identities of [medical] consultative experts would inevitably lessen the number of candid opinions available as well as the number of consultants willing to even discuss a potential medical malpractice claim with counsel.") (quotation omitted). The Court recognizes that, if experts fear being compelled to testify for an opponent, many experts would be less willing to *consult* for the purpose of assisting in the evaluation of a claim. Such concerns are not present here. First, Deutsch was retained for the purpose of testifying at trial, not merely consulting. Second, his opinions were disclosed voluntarily to Defendant. Thus, Deutsch's opinions were not used solely to assist Plaintiff in preparing a case and were not intended to be kept from Defendant. To the contrary, it appears that the only reason Plaintiff chose not to call Deutsch at trial is that Plaintiff reconsidered the extent to which Deutsch's opinions supported her claim. Finally, nothing suggests that Deutsch is being compelled to testify. *See Rubel,* 160 F.R.D. at 460 (stating that concern over compelling expert testimony diminished where expert agrees to consult with adverse party); *Gilly,* 516 N.Y.S.2d at 167, 508 N.E.2d at 901–02 (finding concerns over compelled expert testimony absent where expert's opinion was fully disclosed during discovery, expert was not being compelled to testify, and expert expressed no objection to relating findings at trial).

Accordingly, the Court finds that any prejudice stemming from Deutsch's prior retention by Plaintiff can be eliminated with the proper restriction on the scope of examination.

### 2. *Prejudice from Procedural Posture of Case*

■ Plaintiff argues that Defendant has had ample time to retain its own expert in this matter and failed to do so. In *Rubel,* the court found that the plaintiff "had a full opportunity to produce expert testimony ... from other sources." 160 F.R.D. at 462. The Court agrees that Defendant had the ability to retain its own expert in this case. However, Plaintiff designated Deutsch as a testifying witness and disclosed the content of his opinions in response to Defendant's interrogatories. Defendant may have relied on Plaintiff's designation of Deutsch as sufficient for its purposes at trial. In fact, soon after Defendant learned that Plaintiff had withdrawn Deutsch as an expert witness, Defendant designated him as a witness in the Pretrial Order, a step which the *Rubel* court noted the plaintiff in that case failed to take. *See Rubel,* 160 F.R.D. at 462. Furthermore, the Court does not wish to promote the retention of needless experts in litigation. Until Plaintiff informed Defendant of its withdrawal of Deutsch, the retention of an additional expert was unnecessary. Although Defendant could have retained an expert after Plaintiff withdrew Deutsch, the passage of time makes any evaluation of Plaintiff to determine her condition at the time of the alleged discrimination inherently less reliable. In that respect, Deutsch possesses knowledge that cannot be replicated by a new expert.

### 3. *Prejudice from the Content of Deutsch's Opinion*

■ Plaintiff argues that the content of Deutsch's testimony and report "will be highly inflammatory." Pl.'s Mem. at 9. Plaintiff, however, placed her mental disability at issue in this case. The fact that Deutsch concluded that she suffers from chronic paranoid schizophrenia as opposed to another mental or emotional handicap does not make his findings inflammatory. Similarly, Deutsch is merely enumerating her symptoms as a result of her illness when he concludes that Plaintiff suffers "highly disorganized" and "delusional" thoughts. Although Plaintiff and Plaintiff's expert may disagree with Deutsch's conclusions, the Court does not find those conclusions inflammatory. If, as Plaintiff contends, that report was so inflammatory as to warrant exclusion, it is unlikely Plaintiff would have voluntarily turned this

report over to Defendant in the first place. Accordingly, the Court will permit Defendant to call Deutsch to testify at trial and introduce the Deutsch Report as evidence, with the following restrictions: (1) the parties, as well as Deutsch, may not refer at any time during the trial or in any form to Deutsch's retention by Plaintiff in this litigation; and (2) the Deutsch Report must be redacted to eliminate any reference to Deutsch's retention by Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion in limine to preclude the testimony of Dr. Deutsch at trial and the admission of the Deutsch Report at trial, subject to the restrictions set forth in the Court's opinion.

It is So Ordered.

